*Appeal No. 24-1645*

---

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

KIANA JONES,

Petitioner-Appellant,

v.

STARZ ENTERTAINMENT, LLC,

Respondent-Appellee.

---

On Appeal from the United States District Court
for the Central District of California
Eastern Division
The Honorable Kenly Kiya Kato Presiding
Case No. 5:24-cv-00206-KK-DTB

---

## RESPONDENT-APPELLEE STARZ ENTERTAINMENT, LLC'S
## ANSWERING BRIEF

---

Jeffrey E. Tsai (SBN CA-226081)
DLA PIPER LLP (US)
555 Mission Street, Suite 2400
San Francisco, California 94105
T: 415.836.2500
E: jeff.tsai@dlapiper.com

Angela C. Agrusa (SBN CA-131337)
DLA PIPER LLP (US)
2000 Avenue of the Stars
Suite 400 North Tower
Los Angeles, California 90067
T: 310.595.3000
E: angela.agrusa@dlapiper.com

David Horniak (SBN CA-268441)
DLA PIPER LLP (US)
500 Eighth Street, NW
Washington, DC 20004
T: 202.799.4000
E: david.horniak@dlapiper.com

Attorneys for Respondent-Appellee
STARZ ENTERTAINMENT, LLC

# DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Appellee Starz Entertainment, LLC provides the following Corporate Disclosure Statement:

1. Starz Entertainment, LLC, is a wholly owned subsidiary of Lions Gate Entertainment Corp., which is a publicly held corporation, and no other publicly held corporation owns ten percent or more of Lions Gate Entertainment Corp.'s stock.

2. No other persons, associations of persons, firms, partnerships, or corporations have a pecuniary interest in the outcome of this case.

Respectfully submitted,

Dated: July 22, 2024                    DLA PIPER LLP (US)

By:    /s/ *Jeffrey E. Tsai*
Jeffrey E. Tsai (SBN CA-226081)
555 Mission Street, Suite 2400
San Francisco, CA 94105
T: 415.836.2500
E: jeff.tsai@dlapiper.com

Attorneys for Respondent-Appellee
STARZ ENTERTAINMENT, LLC

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................. 1

STATEMENT OF JURISDICTION ................................. 6

STATEMENT OF THE ISSUES ..................................... 6

PERTINENT AUTHORITIES ........................................ 7

STATEMENT OF THE CASE .......................................... 7

    A.   Keller Submits Thousands of Arbitration Demands............. 7

    B.   The Parties Reach an Impasse on Pre-Arbitration Mediation.................................................................. 9

    C.   Keller Seeks to Initiate 7,300 Arbitrations. ..................... 10

    D.   JAMS Consolidates the Demands for Arbitration. ............. 11

    E.   Keller Repeatedly Attempts to Prevent Arbitration. ........... 12

    F.   The District Court Rejects Jones's Arguments. ................... 15

SUMMARY OF ARGUMENT ...................................... 17

STANDARD OF REVIEW............................................. 22

ARGUMENT ................................................................. 23

I.   The District Court Correctly Ruled Jones Is Not an "Aggrieved" Party under 9 U.S.C. § 4. ........................... 23

    A.   The District Court Correctly Ruled that JAMS's Decision to Consolidate More Than 7,000 Identical Arbitration Demands Was Not a Failure to Arbitrate........ 23

    B.   The Terms Allow JAMS to Decide Consolidation. .............. 31

    C.   The Terms Permit Consolidation........................................ 39

    D.   California Law Permits Consolidation. ............................... 46

        1.   There Is No Conflict Between Section 1281.91(b)(1) and Consolidation. ................................. 46

        2.   If Section 1281.91(b)(1) Conflicts with Consolidation, then the FAA Preempts It. ................. 48

E.      The FAA Permits Consolidation. ........................................50

II.    JAMS's Consolidation Rule Is Not Unconscionable. .......................54

A.      The FAA Does Not Authorize Courts to Selectively
        Enforce Portions of Arbitration Agreements at the
        Request of a Petitioner...........................................54

B.      JAMS's Consolidation Rule Is Not Procedurally
        Unconscionable....................................................56

C.      JAMS's Consolidation Rule Is Not Substantively
        Unconscionable....................................................60

III.   The Discover Bank Rule Is Preempted and Does Not Apply. ..........65

IV.    The JAMS Rules Are Not Severable.................................69

CONCLUSION ...............................................................71

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Ajamian v. CantorCO2e, L.P.,*
  203 Cal. App. 4th 771 (2012) ............................................................. 68

*AT&T Mobility LLC v. Concepcion,*
  563 U.S. 333 (2011) ........................................ 21, 41, 42, 50, 54, 65–67

*Bedgood v. Wyndham Vacation Resorts, Inc.,*
  88 F.4th 1355 (11th Cir. 2023) .................................................... 35, 36

*Sandquist v. Lebo Automotive, Inc.,*
  1 Cal. 5th 233 (2016) .......................................................................... 44

*Cable Connection, Inc. v. DIRECTV, Inc.,*
  44 Cal. 4th 1334 (2008) ................................................................ 47, 48

*Capstone Associated Servs., Ltd. v. Rivero,*
  2013 WL 12140391 (S.D. Tex. Sept. 30, 2013) ................................. 38

*Carlson v. Home Team Pest Def., Inc.,*
  239 Cal. App. 4th 619 (2015) ............................................................. 55

*Chee v. Tesla, Inc.,*
  --- F. Supp. 3d ----, 2024 WL 1898434 (N.D. Cal. Apr. 30,
  2024) ................................................................................................... 56

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
  207 F.3d 1126 (9th Cir. 2000) ............................................................ 29

*Ciccio v. SmileDirectClub, LLC,*
  2 F.4th 577 (6th Cir. 2021) ................................................................ 35

*Cmty. State Bank v. Strong,*
  651 F.3d 1241 (11th Cir. 2011) .................................................... 22, 23

*Cortez v. Doty Bros. Equip. Co.,*
  15 Cal. App. 5th 1 (2017) ................................................................... 44

*Diaz v. Macys W. Stores, Inc.*,
101 F.4th 697 (9th Cir. 2024) ....................................................... 42, 43

*Discover Bank v. Superior Court*,
36 Cal. 4th 148 (2005)................................................ 21, 64, 65, 66–68

*Doctor's Assocs. v. Casarotto*,
517 U.S. 681 (1996)......................................................................... 47

*Fisher v. MoneyGram Int'l, Inc.*,
66 Cal. App. 5th 1084 (2021) .......................................................... 55

*Heckman v. LiveNation*,
2023 WL 5505999 (C.D. Cal. Aug. 10, 2023) .......................... 58, 62, 63

*Hill v. Xerox Bus. Servs., LLC*,
59 F.4th 457 (9th Cir. 2023) ............................................................ 22

*Hodges v. Comcast Cable Comm'cns, LLC*,
21 F. 4th 535 (9th Cir. 2021) ........................................................... 67

*Holley-Gallegly v. TA Operating, LLC*,
74 F.4th 997 (9th Cir. 2023) ............................................................ 22

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002)......................................................... 16, 25, 26, 38

*Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Superior Court*,
133 Cal. App. 4th 396 (2005) ........................................................... 61

*Jacobs v. USA Track & Field*,
374 F.3d 85 (2d Cir. 2004) .............................................................. 24

*John Wiley & Sons, Inc. v. Livingston*,
376 U.S. 543 (1964)................................................................... 24, 38

*Kaspers v. Comcast Corp.*,
631 F. App'x 779 (11th Cir. 2015)..................................................... 36

*Kinecta Alt. Fin. Sols., Inc. v. Superior Court*,
205 Cal. App. 4th 506 (2012) .......................................................... 44

*Lamps Plus, Inc. v. Varela*,
  587 U.S. 176 (2019) .................................................................. 49, 50

*Lang v. PTC, Inc.*,
  2021 WL 5277190 (D.N.J. Nov. 12, 2021) ......................................... 25

*Marx v. Gen. Rev. Corp.*,
  568 U.S. 371 (2013) ............................................................................ 61

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ........................................................... 29

*Morton v. Mancari*,
  417 U.S. 535 (1974) ............................................................................ 34

*Nelsen v. Legacy Partners Residential, Inc.*,
  207 Cal. App. 4th 1115 (2012) ........................................................... 43

*Noble Cap. Fund Mgmt., LLC v. U.S. Cap. Glob. Inv. Mgmt., LLC*,
  31 F.4th 333 (5th Cir. 2022) .............................................................. 27

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024) .............................................................. 29

*Patterson v. ITT Consumer Fin. Corp.*,
  14 Cal. App. 4th 1659 (1993) ............................................................ 58

*Pokrass v. The DirecTV Grp., Inc.*,
  2008 WL 2897084 (C.D. Cal. July 14, 2008) ..................................... 57

*Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*,
  873 F.2d 281 (11th Cir. 1989) ................................................. 47, 49, 51

*Roussos v. Roussos*,
  60 Cal. App. 5th 962 (2021) ............................................................... 60

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020) ..................................................... 37, 50

*Silvers v. Sony Pictures Entm't, Inc.*,
  402 F.3d 881 (9th Cir. 2005) ............................................................. 33

*Steffanie A. v. Gold Club Tampa, Inc.*,
  2020 WL 4201948 (M.D. Fla. July 22, 2020)....................................26

*Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010)........................................................................49, 50

*Styczynski v. MarketSource, Inc.*,
  340 F. Supp. 3d 534 (E.D. Pa. 2018)...................................................56

*Suski v. Coinbase, Inc.*,
  55 F.4th 1227 (9th Cir. 2022), *cert. granted sub nom.*
  *Coinbase, Inc v. Suski*, 144 S. Ct. 375 (2023)....................................29

*U.K. v. Boeing Co.*,
  998 F.2d 68 (2d Cir. 1993) .................................................................50

*Vaden v. Discover Bank*,
  556 U.S. 49 (2009)................................................................................6

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022)............................................... 41, 42, 48, 50, 67, 68

*Vital Pharms. Inc. v. PepsiCo Inc.*,
  2022 WL 2176528 (D. Ariz. June 16, 2022).......................................25

*Walker v. Scoobeez*,
  2018 WL 11321932 (C.D. Cal. Aug. 22, 2018) ...................................44

*Wallrich v. Samsung Elecs. Am., Inc.*,
  --- F.4th ----, 2024 WL 3249646 (7th Cir. July 1, 2024) ..............27, 38

*Weyerhaeuser Co. v. W. Seas Shipping Co.*,
  743 F.2d 635 (9th Cir. 1984).............................................................51

## Statutes

9 U.S.C. § 4 ................................................ 4, 6, 15, 17, 22, 53

9 U.S.C. § 16 ...............................................................................6

18 U.S.C. § 2710 ......................................................................1, 6

28 U.S.C. § 1291 ...................................................................... 6

28 U.S.C. § 1331 ...................................................................... 6

28 U.S.C. § 1367 ...................................................................... 6

Cal. Civ. Proc. Code § 1281.3 ................................................. 61

Cal. Civ. Proc. Code § 1281.6 ........................................... 14, 63

Cal. Civ. Proc. Code § 1281.91 .............3, 13, 20, 21, 45–48, 59–61, 63, 64

## Other Authorities

JAMS Rule 1........................................................ 11, 19, 28, 31

JAMS Rule 6.... 2, 11, 19, 31, 32–34, 36, 38, 40, 43, 49, 50, 53, 55, 56, 59, 64, 68–70

JAMS Rule 11........................................................................ 33–35

JAMS Rule 15.......................................................................... 13

## INTRODUCTION

This appeal is an attempt by Appellant Kiana Jones's counsel, Keller Postman LLC ("Keller"), to reverse its failed effort to make its mass arbitration campaign against STARZ too expensive to defend on the merits. Jones is one of tens of thousands of individuals who Keller solicited to submit identical, simultaneous, boilerplate arbitration demands to JAMS, claiming tenuous violations of the Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"). Keller, using Jones as a stalking horse,[1] brought this Petition under Section 4 of the Federal Arbitration Act ("FAA") seeking to undo JAMS's consolidation of Jones's claims with identical claims brought by other claimants who are also represented by Keller. But, as the district court correctly recognized, Jones and STARZ are already *in* arbitration, consolidation is not a refusal to arbitrate by STARZ, and there is therefore no basis to compel arbitration under FAA Section 4. This Court should affirm.

Fundamental to Keller's strategy when it filed Jones's and her co-claimants' demands with JAMS was an assumption that JAMS would

---

[1] We refer to "Keller" instead of "Jones" or "Appellant" when discussing actions Keller took on behalf of multiple claimants.

institute separate and individual proceedings for each of these tens of thousands of individuals and, as a result, impose exorbitant multi-million-dollar arbitration initiation fees to be borne by STARZ. As Keller well knows, if it were successful in initiating tens of thousands of separate arbitrations, the practical realities of how many arbitrations JAMS can administer in parallel would mean that most of Keller's clients would have to wait many years, if not decades, for a hearing. Thus, Keller's singular goal was to *prevent* arbitration on the merits by forcing STARZ to "tap out" and pay a massive and unwarranted settlement.

But, when Keller sought to initiate the first tranche of 7,300 arbitrations (including on behalf of Jones), JAMS did something unexpected. To ensure a fair and efficient arbitration process that would still provide for each and every claimant to have her/his claim adjudicated, JAMS exercised its discretion and consolidated the arbitrations under JAMS Rule 6(e). As a collateral consequence, it invoiced STARZ for *one* consolidated arbitration proceeding, instead of 7,300. STARZ remains ready and willing to proceed with that consolidated proceeding.

- 2 -

Since that time, however, Keller has done everything possible to impede the arbitration and to undermine JAMS's consolidation decision. Among other things, every time JAMS appoints an arbitrator (which, notably, none of Keller's clients struck during the strike-and-rank process), Keller waits 15 days (the statutory time limit) and files disqualification notices under California Civil Procedure Code Section 1281.91(b)(1) on behalf of most, but not quite all, claimants. Keller then argues to JAMS that the consolidated arbitration must be split, so that claimants who did not disqualify the arbitrator can proceed before their "chosen" arbitrator, while the other claimants proceed before a different arbitrator. JAMS has repeatedly, and correctly, rejected that argument.

After months of failing to persuade JAMS to "deconsolidate" the arbitrations, Keller, on behalf of Jones, filed the present petition to compel arbitration under the Federal Arbitration Act ("FAA"). In it, Jones alleges that she is being unfairly denied her choice of arbitrators because *her own lawyers—Keller—keep disqualifying those same arbitrators on behalf of her co-claimants*. But Keller fails to acknowledge the fatal conflict of interest that hangs over this appeal. Keller's desire to reap extraordinary fees by orchestrating untenable

arbitration proceedings necessarily requires Keller to pit the interests of some claimants against others in arbitrator disqualifications.

As the district court correctly recognized, there is no basis to compel arbitration here. Jones and STARZ are *already* in arbitration before their agreed arbitration provider, JAMS. And the FAA does not provide a basis to challenge how JAMS is *administering* the arbitration. The district court properly dismissed the petition.

On appeal, Jones relies on FAA Section 4 to criticize the district court for declining to rule on whether JAMS, as opposed to an arbitrator, can determine whether the Terms "permit or forbid consolidation." Blue Br. 4. But FAA Section 4 applies only when a party has "faile[d], neglecte[d], or refuse[d]" to arbitrate. 9 U.S.C. § 4. After examining the Terms and the JAMS Rules, the court determined that they are "silent on the issue of requiring a consumer to 'arbitrate individually.'" 1-ER-006. It then concluded, correctly, that because all STARZ did was advocate to JAMS for consolidated proceedings, STARZ cannot be deemed to have failed, neglected, or refused to arbitrate.

Jones paints a false narrative of a classic battle between a lone consumer who simply wants her day in court and a business that has

supposedly thwarted her at every turn. The opposite is true. At no point has STARZ done anything other than seek arbitration within the framework of the applicable STARZ Terms of Use ("Terms"), advocate to JAMS for its interpretation of those Terms, and attempt to find a practical, efficient, and fair way to conduct arbitration.

Jones's real dispute is *not* with STARZ—it is with JAMS and JAMS's decisions in conducting the arbitration proceeding already in progress. JAMS concluded that its Rules permit JAMS—not an arbitrator—to determine whether the Terms permit consolidation and whether consolidation is appropriate. And that is precisely what JAMS did. For its part, STARZ has abided by every one of JAMS's decisions, including decisions that are adverse to STARZ. It is actually STARZ, not Jones, which is being unfairly denied a hearing on the merits.

At bottom, this appeal is not about STARZ's conduct—it is about JAMS's interpretation of its own rules. And that is not a proper basis for relief under federal law. Jones may not agree with JAMS's decisions, but JAMS's decision is not a failure, neglect, or refusal—*by STARZ*—to arbitrate.

This Court should affirm.

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1367 because the controversy underlying Jones's petition to compel arbitration under the FAA, 9 U.S.C. § 4, involves the VPPA, 18 U.S.C. § 2710, which implicates federal question jurisdiction. *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009).

This Court has jurisdiction because the district court's order granting STARZ's motion to dismiss the petition to compel arbitration is an appealable final order. *See* 9 U.S.C. §§ 16(a)(1)(B), 16(a)(3); 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.      Whether the district court correctly found that Jones is not an "aggrieved" party under 9 U.S.C. § 4 due to alleged failure, neglect, or refusal to arbitrate by STARZ where the parties are currently engaged in arbitration before JAMS, their agreed arbitration forum.

2.      Whether the parties' arbitration agreement is unconscionable because it incorporates the JAMS Comprehensive Rules and Procedures, which, among other things, delegate to JAMS authority to consolidate arbitrations that involve common issues of fact and law.

## PERTINENT AUTHORITIES

Except for the statutory provisions and rules that appear in the Addendum to this brief, all pertinent statutory provisions and rules appear in Appellant's Addendum of Pertinent Authorities.

## STATEMENT OF THE CASE

### A.    Keller Submits Thousands of Arbitration Demands.

STARZ is a leading media and entertainment company that produces and distributes premium streaming content to audiences across subscription television platforms, including its website. In January 2023, Keller simultaneously submitted to JAMS, on behalf of Jones and tens of thousands of other individual claimants, identical arbitration demands against STARZ. *See* 3-ER-466; 4-ER-738; 4-ER-691. The arbitration demands allege that STARZ violated the VPPA by enabling a snippet of third-party code on its website called the "Meta Pixel" that was developed by Facebook and is used on millions of websites. *See* 2-ER-257-63. According to claimants, STARZ's implementation of the Meta Pixel captured and relayed to Facebook the title of videos they watched on the STARZ website, in violation of the VPPA. *See* 2-ER-260-62. STARZ vigorously disputes the allegations.

Each claimant concedes being bound by the same version of the

STARZ Terms. *See* 3-ER-465. The arbitration provision in those Terms

provides as follows:

> All controversies, disputes or claims arising out of
> or relating to these Terms of Use will be
> determined pursuant to the mediation and
> arbitration procedures of JAMS, and administered
> by JAMS or its successor ("JAMS") in accordance
> with the comprehensive rules and procedures,
> including the optional appeal procedure, of JAMS
> ("JAMS Rules"), as modified by these Terms of
> Use. The parties will endeavor first to attempt to
> resolve the controversy or claim through
> mediation administered by JAMS before
> commencing any arbitration.
>
> . . .
>
> You and Starz agree that each may bring claims
> against the other only in your or its individual
> capacity, and not as a plaintiff or class member in
> any purported class or representative proceeding.

3-ER-496.

Following submission of the demands, Keller requested that

JAMS hold proceedings in abeyance while the parties pursued pre-

arbitration mediation as required by the Terms. 4-ER-738.

### B.    The Parties Reach an Impasse on Pre-Arbitration Mediation.

To date, the required pre-arbitration mediations have not yet occurred because the parties did not reach agreement on how to conduct them. *See* 3-ER-466–67; 4-ER-607–08; 4-ER-611; 4-ER-616. The impasse was not due to any STARZ refusal to mediate.

STARZ has been—and remains—willing to participate in a single, consolidated mediation with any claimants who participate in the consolidated arbitration. *See* 4-ER-683. STARZ has also alternatively maintained that it would participate in individual pre-arbitration mediations where the parties split the mediation fees 50/50. *See* 4-ER-607. STARZ has repeatedly offered to work with Keller to identify cost-effective mediators and creative mediation structures, such as part-day mediations, virtual mediations, and considering mediators outside the JAMS network—but Keller has failed to respond to these offers. *See* 2-ER-074. STARZ has only objected to (1) participating in a single, consolidated mediation followed by thousands of *individual* arbitrations, and (2) Keller's attempt to saddle STARZ with the vast majority of the fees for 7,300 individual mediations.

- 9 -

In May 2023, via a single email on behalf of 7,300 claimants, Keller requested that JAMS initiate individual mediations. *See* 4-ER-604. Keller further requested that JAMS order STARZ to pay all mediation fees in excess of $250. 4-ER-604. STARZ opposed, and in June 2023, JAMS rejected Keller's request. 4-ER-738.

### C.    Keller Seeks to Initiate 7,300 Arbitrations.

Having failed in its initial effort to turn the process into a financially prohibitive one for STARZ, Keller next sent JAMS a single email on behalf of 7,300 claimants seeking to initiate 7,300 individual *arbitrations* in order to resolve the mediation-fee dispute. 4-ER-616. Keller took the position that, "[u]nder the JAMS rules designated in the arbitration agreement, [the mediation fee] dispute is for a JAMS arbitrator to resolve." 4-ER-616. In other words, Keller's initiation email invited JAMS to interpret the Terms and the JAMS Rules and issue a ruling in its clients' favor—the very type of decision it now claims that JAMS should not have made.

Through its demand, Keller sought to impose JAMS's $1,750 arbitration initiation fee on STARZ for each of Keller's 7,300 claimants. *See* 3-ER-536; 3-ER-517-34. Had JAMS separately initiated all of the

7,300 arbitrations, STARZ would have been immediately invoiced for $12,775,000 in arbitration *initiation* fees alone. 3-ER-536; 3-ER-517-34; 4-ER-616.

JAMS granted Keller's request to initiate arbitration regarding the mediation fee dispute over STARZ's objection. *See* 3-ER-468; 4-ER-619. However, JAMS also requested that the parties submit briefing to the JAMS National Arbitration Committee ("NAC") on whether the arbitrations should be consolidated under JAMS Rule 6(e).[2] 3-ER-468; 4-ER-619. Over the next four weeks, the parties submitted that briefing. *See* 3-ER-468; 4-ER-560-644, 681-688.

### D.     JAMS Consolidates the Demands for Arbitration.

In August 2023, after "receiv[ing] and review[ing] the parties' positions on the issue of consolidation," the NAC determined that the 7,300 demands for arbitration should be consolidated. *See* 3-ER-468; 4-ER-690–92. The NAC determined that the Terms "do not prohibit the

---

[2] JAMS Rule 1(c) states that "[t]he authority and duties of JAMS as prescribed . . . in these Rules shall be carried out by the [NAC] . . . ." 3-ER-542. The NAC "decides issues of controversy that may arise when the arbitrator is unavailable, has not yet been appointed, or the issue involves the arbitrator, such as claims of conflict." *See* www.jamsadr.com/arbitration?tab=overview.

consolidation of multiple filings," that "California law on arbitrator selection and disqualification does not preclude the consolidation of these Demands," and that "consolidation would enable fair, efficient, and timely adjudication of these disputes." 4-ER-691–92. As a result, JAMS invoiced STARZ for a single, consolidated arbitration initiation fee of $1,750. 2-ER-078.

### E. Keller Repeatedly Attempts to Prevent Arbitration.

STARZ has been ready and willing to proceed with arbitration since JAMS commenced the arbitration a year ago. *See* 2-ER-075. STARZ has promptly paid its share of the arbitration initiation fees, has not sought judicial relief, has responded timely to every request from JAMS, has participated in the arbitrator selection process, and has not sought to disqualify any arbitrators. 2-ER-075.

Keller has taken the opposite approach. In response to JAMS's consolidation determination, Keller has consistently tried to delay, frustrate, and ultimately derail arbitration. For instance, Keller argued *to JAMS* that the arbitration agreement was unconscionable and necessitated reversal of consolidation to the extent that each claimant did not receive a separate hearing in his or her hometown. *See* 4-ER-

697. In doing so, Keller again invited JAMS to interpret the Terms and the JAMS Rules and issue a ruling in Keller's favor. After hearing the parties' arguments yet again, JAMS declined to reverse the consolidation decision. *See* 4-ER-701.

Additionally, Keller sought to undermine the process for selecting an arbitrator by using its position as counsel to make decisions for certain claimants that directly contradicted the interests of other claimants. Fifteen days after JAMS appointed an arbitrator that neither party had struck and circulated the arbitrator's disclosures, Keller sent a single email on behalf of 7,213 claimants (out of the 7,282 claimants that Keller putatively represents) serving 7,213 identical boilerplate disqualification notices pursuant to California Civil Procedure Code Section 1281.91(b)(1). *See* 4-ER-704; *see also* 3-ER-547; 4-ER-730. The notices did not explain the basis for disqualification, and Keller repeatedly refused to give any reason. *See* 4-ER-716; 4-ER-722–23.

STARZ opposed disqualification and argued that, if JAMS concluded the disqualification was valid, the arbitrator would have to be disqualified from the entire consolidated proceeding under JAMS Rule

- 13 -

15(f). *See* 4-ER-718–20. The NAC concluded that JAMS would honor the requests for disqualification but agreed with STARZ that the arbitrator had been disqualified from the entire consolidated arbitration, not just part of it.[3] 4-ER-730; *see also* 3-ER-469.

JAMS then appointed a second arbitrator. *See* 2-ER-080. Eight days later, Keller wrote to JAMS asking it "to suspend its administration of" the arbitration and "withdraw[] the appointment of" the arbitrator so that Keller could "seek relief in court." 2-ER-091. STARZ opposed suspending the arbitration, and JAMS declined to suspend it. *See* 3-ER-433.

Meanwhile, Keller again waited 15 days following arbitrator appointment and then sent a single email serving identical, boilerplate notices of disqualification on behalf of all claimants, including Jones. *See* 2-ER-097. STARZ opposed disqualification, *see* 2-ER-99-100, but JAMS rejected STARZ's argument, *see* 3-ER-433. This process repeated

---

[3] In January 2024, Keller sent STARZ a letter demanding that STARZ "stipulate to resolve the instant disputes with Claimants through individual arbitrations, and not in a consolidated arbitration." 4-ER-654; *see also* 3-ER-469. STARZ declined to stipulate and reiterated its willingness to proceed immediately with the consolidated arbitration. 4-ER-659; *see also* 3-ER-470.

after JAMS appointed a third arbitrator, which Keller subsequently noticed for disqualification. *See* 2-ER-102; 2-ER-111.[4]

## F.      The District Court Rejects Jones's Arguments.

In January 2024, Keller filed a petition to compel arbitration ("Petition") on behalf of Jones in the Central District of California. 3-ER-464. Jones did not—and could not—complain that arbitration was unavailable because, in fact, Jones and STARZ have been in arbitration since July 2023. *See* 4-ER-619. Rather, Jones sought the district court's intervention to declare JAMS's consolidation procedure "unconscionable, unenforceable, and severed." 3-ER-478. STARZ filed a motion to dismiss the Petition, and Jones filed a cross-motion to compel arbitration. 3-ER-434; 2-ER-165. After completion of briefing on both

---

[4] After filing its Petition, Keller continued to strike arbitrators on behalf of most, but not all claimants, without explanation. In total, Keller struck five arbitrators after JAMS provided two separate rank-and-strike lists for the parties to consider. After Keller struck the fifth proposed arbitrator, JAMS informed the parties that, in light of Keller's repeated striking, "the parties' agreed method of appointing has failed or cannot be followed." JAMS informed the parties that pursuant to Cal. Civ. Proc. Code § 1281.6, either party may petition a court to appoint an arbitrator. As of the date of this filing, Keller has not petitioned a court to appoint an arbitrator.

motions, the district court granted STARZ's motion to dismiss and denied Jones's motion to compel as moot. 1-ER-002.

In its order, the district court determined that Jones is not an "aggrieved" party under 9 U.S.C. § 4 because STARZ has not "failed, neglected, or refused" to arbitrate. 1-ER-005. The district court noted that Jones and STARZ have been in arbitration proceedings before JAMS, their chosen arbitration provider, since July 2023. 1-ER-005. Further, the district court found that the Terms and the JAMS Rules are "silent on the issue of requiring a consumer to 'arbitrate individually.'" 1-ER-006. Consequently, Jones "fail[ed] to explain how [STARZ]'s alleged failure to allow a consumer to 'arbitrate individually' constitutes a failure, neglect, or refusal to arbitrate consistent with the parties' arbitration agreement." 1-ER-006.

Additionally, the district court found that under the FAA, its role was "limited" to "decid[ing] gateway questions of arbitrability, such as 'whether the parties have submitted a particular dispute to arbitration' and 'whether the parties are bound by a given arbitration clause.'" 1-ER-006 (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83, 84 (2002)). The district court found that "the parties have submitted

their dispute to arbitration, and the parties are bound by the JAMS Arbitration Agreement." 1-ER-007. Because the district court had "fulfilled its limited role under the FAA," it "decline[d] to address the procedural issues of consolidation and payment of arbitration fees which shall be decided by the arbitrator." 1-ER-007.

Jones appealed the district court's decision. Blue Br. 5.

## SUMMARY OF ARGUMENT

The district court correctly rejected Jones's demand for improper judicial intervention to overrule JAMS's construction of its own generally applicable procedural rules. Keller does not like how JAMS has interpreted those rules, because JAMS's decision to consolidate arbitrations, and to invoice STARZ for only one arbitration, eliminated Keller's leverage to force an early settlement without having the arbitrator examine the merits of the underlying claims. Keller, through Jones, therefore seeks to use the FAA and unconscionability doctrine improperly to have this Court excise certain JAMS Rules and to prohibit JAMS (and other arbitration providers) from interpreting and administering their own rules. This Court should reject that invitation.

As a threshold matter, the district court correctly determined that Jones is not an "aggrieved" party under 9 U.S.C. § 4 because STARZ has not "failed, neglected, or refused" to arbitrate. Jones and STARZ are already in arbitration. STARZ has paid all fees, participated in arbitrator selection, and has not taken any action to halt arbitration. STARZ has cooperated with JAMS's decisions and has sought to move the arbitration forward at every turn. The district court correctly concluded that STARZ has not refused to arbitrate under the FAA merely by briefing and advocating for a particular construction of the Terms and the JAMS Rules.

The district court also correctly found that consolidation is a procedural matter that is beyond the scope of threshold arbitrability issues subject to review by courts under the FAA. Courts have repeatedly ruled that procedural questions like consolidation are to be addressed in arbitration, not resolved in court. Further, the parties' arbitration agreement expressly incorporates the JAMS Rules, and JAMS is permitted to interpret its own rules. Here, JAMS simply interpreted its rules and concluded that they permit the JAMS NAC—a committee composed of arbitrators from the JAMS roster—to determine

whether the Terms permit consolidation. The FAA does not require that such procedural determinations be made by a single "arbitrator" appointed by a specific process.

If this Court agrees with the foregoing, then it need not reach Jones's other arguments. However, even if it does reach them, it should still affirm.

*First*, even if the district court had independently evaluated whether the Terms permit the NAC, as opposed to an appointed arbitrator, to decide whether the Terms permit consolidation, the answer is yes. JAMS Rule 6(e) provides that, "[u]nless the Parties' Agreement or applicable law provides otherwise, *JAMS*"—not the arbitrator—"may consolidate." (Emphasis added.) And JAMS Rule 1(c) provides that "[t]he authority and duties of JAMS as prescribed . . . in these Rules shall be carried out by the JAMS National Arbitration Committee." Thus, by agreeing to the JAMS Rules, Jones and STARZ agreed that the NAC may consolidate arbitrations. Jones's textual argument that Rule 6(e) requires an individual arbitrator, not the NAC, to make the determinations that proceed the word "JAMS" is an

illogical reading of that provision and is inconsistent with the context in which it appears.

*Second*, even if the FAA required the district court to evaluate whether the Terms permit consolidation, the answer is yes. Importantly, the Terms do not contain the words "individual arbitration" or "bilateral arbitration." The Terms' requirement for disputes to be litigated in an "individual capacity" refers to an altogether different concept—that is, as the NAC has repeatedly recognized and concluded, claimants must bring a claim in his/her own individual capacity and not on behalf of others. Nothing in the Terms prohibits consolidation of individual arbitration demands before a single arbitrator.

*Third*, California and federal law permit consolidation. California Civil Procedure Code Section 1281.91(b)(1) simply provides a waivable right to *disqualify* an arbitrator for cause; it does not entitle a party to the arbitrator of its choice. It is therefore fully consistent with consolidation. And if it were not, it would be preempted by the FAA. As for federal law, the FAA plainly permits consolidation. At bottom,

Jones's FAA argument conflates consolidation with class/representative arbitration. Restrictions on the latter have no bearing on the former.

*Fourth*, JAMS's consolidation rule is not procedurally or substantively unconscionable. It is not procedurally unconscionable because what is at issue is a set of generally applicable arbitration rules drafted by a neutral third party (JAMS), and the contract is for non-essential, recreational activities. And it is not substantively unconscionable because there is no conflict between Section 1281.91(b)(1) and consolidation. In a consolidated arbitration, each party—including every claimant—*still* has the right to disqualify an arbitrator under Section 1281.91(b)(1).

*Fifth*, JAMS's consolidation rule has nothing to do with the scope of FAA preemption of California's *Discover Bank* rule, which rendered class action waivers unconscionable. The Supreme Court held in *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), that the FAA preempts the *Discover Bank* rule because the rule targets arbitration clauses specifically and undermines the FAA's "principal purpose" to enforce arbitration agreements according to their terms. *Id.* at 344. *Concepcion* and its progeny hold that state law cannot treat arbitration

clauses differently than other contracts. That holding is not limited to arbitration agreements that require one-on-one arbitration. The FAA preempts the *Discover Bank* rule when an arbitration clause permits consolidation.

Finally, even if the Court were to hold that JAMS's consolidation rule is unconscionable, that provision is not severable from the rest of the JAMS Rules. Jones essentially seeks to strike from the arbitration only those generally applicable JAMS Rules that are impeding Keller's mass arbitration strategy, while leaving the rest intact. This Court should not endorse such chicanery. Consolidation is a core part of the JAMS Rules, and if it fails, then the entire arbitration agreement should be held unenforceable.

## STANDARD OF REVIEW

Both granting a motion to dismiss and denial of a motion to compel arbitration are reviewed de novo. *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 468 (9th Cir. 2023). Factual findings underlying the district court's order are reviewed for clear error. *Holley-Gallegly v. TA Operating, LLC*, 74 F.4th 997, 1000 (9th Cir. 2023).

## ARGUMENT

**I.  The District Court Correctly Ruled Jones Is Not an "Aggrieved" Party under 9 U.S.C. § 4.**

**A.  The District Court Correctly Ruled that JAMS's Decision to Consolidate More Than 7,000 Identical Arbitration Demands Was Not a Failure to Arbitrate.**

Section 4 of the FAA provides that "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Section 4 is "only triggered when one party has expressed a 'refusal' to arbitrate, and the other party has been thereby 'aggrieved.'" *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1256 (11th Cir. 2011).

The district court correctly found that Jones "allege[d] no specific facts from which one can reasonably infer [STARZ] has failed, neglected, or refused to arbitrate." 1-ER-005. As the district court observed, "JAMS commenced arbitration proceedings as to roughly 7,300 pending arbitration demands, including [Jones's]," and STARZ has participated in those proceedings, including by "ranking and striking arbitrators from a list of arbitrators provided by JAMS[.]" 1-

- 23 -

ER-005 (quoting 3-ER-468, ¶ 11). STARZ has also paid all required fees; promptly responded to every JAMS inquiry; and not filed any action in court or any other forum to halt or otherwise frustrate the arbitration. 2-ER-075.

The district court also correctly rejected Jones's argument that STARZ has "refused to arbitrate" by advocating for consolidation. 1-ER-006. It reviewed the Terms and concluded they (1) are "silent on the issue of requiring a consumer to 'arbitrate individually,'" and (2) expressly incorporate the JAMS Rules, which "specifically provide for consolidation of arbitrations." 1-ER-006. On these facts, the court correctly concluded that STARZ's "alleged failure to allow a consumer to 'arbitrate individually'" is not "a failure, neglect, or refusal to arbitrate consistent with the parties' arbitration agreement." 1-ER-006; *see also Jacobs v. USA Track & Field*, 374 F.3d 85, 89 (2d Cir. 2004) ("The fact that respondents raised before the AAA an objection to petitioner's Demand for Arbitration—and the fact that the AAA agreed with that objection—does not constitute a 'refusal to arbitrate' on the part of respondents.").

Jones does not appear to dispute any of the above. Rather, she incorrectly argues that the district court erred because it was obligated under the FAA to decide whether the JAMS Rules require an appointed arbitrator, as opposed to the JAMS NAC, to evaluate whether the Terms prohibit consolidation. Blue Br. 24–26. As the district court correctly observed, courts have a "limited role under the FAA" to decide "gateway questions of arbitrability." 1-ER-006. "Once it is determined . . . that the parties are obligated to submit the subject matter of the dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator." *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964); *accord Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (explaining procedural questions "are presumptively *not* for the judge, but for an arbitrator, to decide"). Thus, once the district court had determined that STARZ had not refused to arbitrate, it correctly declined to make any further rulings regarding "procedural issues as to how the arbitration should proceed." 1-ER-005.

In essence, Jones seeks a holding that the FAA requires courts to determine whether an arbitration agreement allows specific tasks

under the arbitrator's rules to be performed by an arbitration administrator (in this case, JAMS) or an appointed arbitrator. But courts have repeatedly ruled that by incorporating an arbitration provider's rules into their arbitration agreement, the parties also agreed that the arbitration providers would interpret those rules—not the courts. *See, e.g., Lang v. PTC, Inc.*, 2021 WL 5277190, at *5 (D.N.J. Nov. 12, 2021) (holding incorporation of JAMS Rules into arbitration agreement requires application of those rules "*as applied and interpreted by JAMS*"; also observing "the general principle that the arbitral authority is the interpreter of its own rules"); *Vital Pharms. Inc. v. PepsiCo Inc.*, 2022 WL 2176528, at *8 n.3 (D. Ariz. June 16, 2022) ("The Court has no warrant to disturb the AAA's interpretation of its own rules"); *Steffanie A. v. Gold Club Tampa, Inc.*, 2020 WL 4201948 (M.D. Fla. July 22, 2020) (declining to order the AAA to reopen an arbitration it previously closed under its rules). Here, JAMS interpreted its own rules to allow the NAC to determine whether the Terms permit consolidation. Jones seeks to override that determination by denying JAMS's ability to interpret its own rules and instead imbed the courts in every aspect of arbitration—requiring them to decide repeatedly and

in perpetuity whether arbitration administrators' own rules authorize administrators to undertake certain tasks. Jones's contortion of the law would essentially render arbitration pointless. These are not gateway "questions of arbitrability" with which the FAA is concerned; rather they go into procedural issues that "are presumptively *not* for the judge" to decide. *Howsam*, 537 U.S. at 84.

Further, Jones's artificial distinction between the arbitration administrator and an appointed arbitrator does not actually exist under the FAA. As numerous courts have held, the decisions of the parties' agreed arbitration administrator are just as much "arbitration" under the FAA as the decisions of an individual appointed arbitrator. *See, e.g.*, *Wallrich v. Samsung Elecs. Am., Inc.*, --- F.4th ----, 2024 WL 3249646, at *8 (7th Cir. July 1, 2024) (holding that where AAA applied its own rules to deny a stay and terminate arbitration based on nonpayment of fees without ever appointing an arbitrator, the parties nonetheless "fully 'arbitrated' under their agreement"); *Noble Cap. Fund Mgmt., LLC v. U.S. Cap. Glob. Inv. Mgmt., LLC*, 31 F.4th 333, 336 (5th Cir. 2022) ("Here the parties' arbitration agreements called for arbitration pursuant to JAMS [Rules], which included the right of JAMS to

terminate the arbitration proceedings for nonpayment of fees by any party. Exercising this right, JAMS terminated the arbitration proceeding following the Fund's nonpayment. Following the lead of our sister circuits, we conclude the arbitration 'has been had.'").

The distinction Jones attempts to draw between administrator and appointed arbitrator also fails because the decision-maker on consolidation was the NAC, a committee of arbitrators from JAMS's roster. The NAC is not, as Jones argues, "akin to clerks of court," Blue Br. 2—it is composed of experienced decision-makers (arbitrators in their own right) in whom the JAMS Rules expressly vest "[t]he authority and duties of JAMS as prescribed . . . in these Rules." JAMS Rule 1(c).

Further, Keller's conduct in the proceeding contradicts Jones's argument. Keller has repeatedly and voluntarily submitted, on behalf of Jones and her co-claimants, substantive issues regarding the interpretation of the Terms to JAMS and the NAC for decision. For example, Keller requested, on behalf of all claimants (including Jones), that JAMS construe the Terms to require STARZ to pay substantially all pre-arbitration mediation fees. 4-ER-604. Keller also requested, on

behalf of all claimants, that JAMS construe the terms to allow JAMS to initiate arbitrations before pre-arbitration mediations have been conducted in order to resolve the dispute over mediation payment procedure. 4-ER-616. Clearly, Keller does not actually believe that the FAA first required a court to decide whether the NAC could issue these rulings. Only when Keller is dissatisfied with the JAMS NAC's decisions do such matters apparently become issues for the courts.

The authorities Jones cites also do not support the proposition that the FAA requires courts to determine whether arbitration administrators, as opposed to arbitrators, can decide procedural disputes like consolidation. In each case Jones cites, the court simply resolved a dispute over whether the parties agreed that certain issues were arbitrable, *i.e.*, they should be decided in arbitration *as opposed to in court. See Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (court could not decide arbitrability issue that parties delegated to arbitrator); *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1230 (9th Cir. 2022), *cert. granted sub nom. Coinbase, Inc v. Suski*, 144 S. Ct. 375 (2023) (court could decide arbitrability issue that parties did not delegate to arbitrator); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201,

1209 (9th Cir. 2016) (court could not decide arbitrability issue that parties delegated to arbitrator); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000) (res judicata defense "must be considered by the arbitrator, not the court").

The present dispute is not about arbitrability. Jones and STARZ agree that the Terms should be construed *in arbitration*, they just disagree over whether that construction can be performed by the JAMS NAC. None of these cases conclude that where an agreement delegates disputes to arbitration, the court must then still decide whether particular procedural disputes can be resolved by an arbitration administrator or someone specifically appointed to arbitrate the merits.

The district court's order is fully consistent with all of these decisions. The district court looked at the Terms, determined that the parties had agreed to arbitrate their disputes before JAMS and to apply the JAMS Rules, and concluded that they were already in arbitration before JAMS under those Rules. 1-ER-005. That is all the FAA and these decisions call for. Jones's insistence that the district court should have gone a step further and dictated which JAMS person, under the

JAMS Rules, gets to decide certain procedural disputes, is beyond the scope of the "limited review" called for by the FAA. 1-ER-005.

## B.    The Terms Allow JAMS to Decide Consolidation.

As discussed above, the district court correctly declined to reach whether the JAMS NAC can decide whether the Terms permit consolidation. This Court should do the same and affirm.

However, if this Court were to reach the issue, the parties plainly agreed that the JAMS NAC could decide whether the Terms permit consolidation. The parties expressly agreed that "*[a]ll* controversies, disputes or claims arising out of or relating to these Terms of Use will be determined *pursuant to the mediation and arbitration procedures of JAMS*, and *administered by JAMS* or its successor ("JAMS") *in accordance with the comprehensive rules and procedures.*" 3-ER-496 (emphases added). JAMS Rule 6(e), in turn, provides that "[u]nless the Parties' Agreement or applicable law provides otherwise, *JAMS*, if it determines that the Arbitrations so filed have common issues of fact or law, may consolidate Arbitrations." (Emphasis added). And JAMS Rule 1(c) expressly provides that "the authority and duties of JAMS" under the Rules "shall be carried out by the JAMS National Arbitration

Committee." JAMS was therefore correct in determining that under Rule 6(e), the NAC could "carr[y] out" JAMS's duty of determining whether "the Parties' Agreement or applicable law" prohibits consolidation.

Trying to evade this conclusion, Jones urges a distorted interpretation of Rule 6(e), arguing that because the word "JAMS" appears in the middle of the sentence, it must mean that JAMS's power of determination only applies to the subsequent words, and the words preceding it—"Unless the Parties' Agreement or applicable law provides otherwise"—are not appropriate for determination by JAMS. But Jones gives no logical reason for divorcing the "otherwise" clause from the rule in this way. Rather, the more natural reading is that JAMS is permitted to consolidate arbitrations if it determines that "the Parties' Agreement or applicable law" does not prohibit it. That reading is also supported by the surrounding context of the rule, which Jones ignores. JAMS Rule 6 is titled "Preliminary and Administrative Matters" and deals almost entirely with matters that JAMS—not "an arbitrator," but *JAMS*—is authorized to address. For example:

- Rule 6(a): "*JAMS* may convene . . . administrative conferences to discuss any procedural matter";

- Rule 6(b): "If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement, *JAMS* may determine the location of the Hearing";

- Rule 6(c): "If, at any time, any Party has failed to pay fees or expenses in full, *JAMS* may order the suspension or termination of the proceedings";

- Rule 6(d): "If the Parties wish to have any documents returned to them, they must advise *JAMS* in writing";

- Rule 6(e): "Unless the Parties' Agreement or applicable law provides otherwise, *JAMS* . . . may consolidate Arbitrations . . . ."

(Emphases added). Thus, read in the context of Rule 6 as a whole, subsection (e) of that rule authorizes JAMS to determine whether the parties' arbitration agreement bars consolidation. And subsections of Rule 6 frequently put "JAMS" in the middle of a sentence without any apparent intent to limit JAMS's powers by this grammatical structure.

Jones wrongly claims that such a construction runs afoul of the statutory construction canon *expressio unius est exclusio alterius*. Blue Br. 29. That canon only applies when a statute "designates certain persons, things or manners of operation," but omits others. *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 885 (9th Cir. 2005). In that case, those "omissions should be understood as exclusions." *Id*. The canon has no bearing here because there is no "omission" in Rule 6(e). Rule 6(e) expressly states that "JAMS" is authorized to consolidate proceedings. Jones's actual argument therefore appears to be, not that the Rule omitted JAMS, but rather that it should have said "JAMS" at the start of the sentence. That is not a proper application of the canon.

Next, Jones argues that JAMS lacked authority to construe Rule 6(e) in this way under JAMS Rule 11(a), claiming that Rule 11(a) specifies that only arbitrators can interpret the JAMS Rules. Blue Br. 27. But Jones ignores the opening words of that rule: "*Once appointed*, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules and conduct of the Arbitration Hearing." 3-ER-546 (emphasis added). Before an arbitrator has been appointed, Rule 11(a) does not apply. And the prefatory phrase "[o]nce appointed"

- 34 -

in Rule 11(a) necessarily implies that—before an arbitrator is appointed—*someone else* (i.e., JAMS) may "resolve disputes about the interpretation and applicability" of the Rules. Moreover, Rule 6(e) is a specific rule addressing JAMS's authority to interpret the Terms for a specific, limited purpose, whereas Rule 11(a) is simply a general rule of delegation. Applying the specific-versus-general canon, Rule 11(a) must give way. *Morton v. Mancari*, 417 U.S. 535, 550-51 (1974) ("Where there is no clear intention otherwise, a *specific* statute will not be controlled or nullified by a *general* one" (emphases added)).

Jones also argues that, under JAMS Rule 11(b), all disputes about "interpretation" of the arbitration agreement and "who are proper Parties to the Arbitration" must be "submitted to and ruled on by the Arbitrator." Blue Br. 27. But Jones reads Rule 11(b) too broadly. The full rule states, "*Jurisdictional and arbitrability disputes*, including disputes over the formation, existence, validity, interpretation, or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator.*" 3-ER-546. The language Jones relies on is limited by the first clause of the sentence "[j]urisdictional and arbitrability disputes."

Here, the dispute over whether the Terms permit consolidation involves neither jurisdiction nor arbitrability. Rule 11(b) is irrelevant here.

Jones's cited authority does not support a contrary conclusion. In *Ciccio v. SmileDirectClub, LLC*, the Sixth Circuit merely held that, "[b]y incorporating the AAA rules, the parties agreed that an arbitrator would decide gateway questions of arbitrability"—accordingly, the court found that "neither the administrator nor the district court should have decided whether [the plaintiff's] claims were arbitrable." 2 F.4th 577, 582 (6th Cir. 2021). Here, the issue is not arbitrability, it is the procedural issue of consolidation, and by incorporating the JAMS Rules, the parties expressly agreed that *JAMS*—not the arbitrator—would decide that issue.

As for *Bedgood v. Wyndham Vacation Resorts, Inc.*, that decision actually *undermines* Jones's position. In *Bedgood*, the Eleventh Circuit rejected the argument that a determination of "default" was "reserved to the arbitrator" and could not be decided by the arbitration administrator (in that case, AAA). *See* 88 F.4th 1355, 1363–64 (11th Cir. 2023). The court reasoned that the AAA had authority to decide the issue because "the contracts at issue are governed by the AAA's

Consumer Arbitration Rules, which expressly delegate policy-compliance determinations to the AAA administrator," and "*no provision of the parties' contracts reallocates that authority to the arbitrator.*" *Id.* at 1363 (emphasis added).

That is exactly what happened here. *Bedgood* supports enforcing the parties' delegation, through JAMS Rule 6(e), of consolidation decisions to JAMS. Jones quotes a *Bedgood* footnote distinguishing an unpublished decision holding that the AAA (as opposed to the arbitrator) could not decide that an arbitration clause was unconscionable. *See* 88. F.4th at 1364 n.5 (distinguishing *Kaspers v. Comcast Corp.*, 631 F. App'x 779 (11th Cir. 2015)). But Jones fails to note that in that case, neither the parties' agreement nor the AAA rules delegated determinations of "merits-based issues" like an "arbitration clause's validity and enforceability" to the AAA. *See id.* Consolidation is not a "merits-based issue[]." *Id.* And even if it were, the parties agreed to a JAMS Rule that expressly delegates the consolidation determination to JAMS.

Jones also cites to *Shivkov v. Artex Risk Sols., Inc.*, for the inapposite proposition that the Supreme Court's "discussion of class

arbitration is a weighty thumb on the scale in favor of treating class arbitration as a gateway issue for a court to presumptively decide." Blue Br. 31 (quoting 974 F.3d 1051, 1066–67 (9th Cir. 2020)). But, as discussed below, consolidation is completely different from class arbitration, *infra* Part I.C, and Jones does not cite any decision suggesting that mere consolidation is a "gateway issue" for courts to decide. Moreover, unlike here, the arbitration clause in *Shivkov* did not expressly incorporate the arbitration provider's rules. 974 F.3d at 1068 (noting the applicable arbitration "[c]lause does not incorporate the AAA rules"). This Court therefore held the failure to incorporate expressly the arbitration provider's rules meant the parties did not "clearly and unmistakably" delegate the issue of class arbitration to the arbitrator. *Id.* at 1069. In contrast, the STARZ Terms expressly incorporate JAMS Rules and thereby expressly delegate consolidation decisions to JAMS.

In sum, the parties agreed to JAMS Rule 6(e), which expressly authorizes the JAMS NAC to determine whether the Terms permit consolidation.

## C.    The Terms Permit Consolidation.

Despite arguing that the district court should have decided if the NAC or the arbitrator had the authority to determine whether the Terms permit consolidation, Jones later argues that, in fact, the district court itself should have decided the consolidation question. *See* Blue Br. 32–37, 45–46. Jones is wrong on all fronts.

The thesis of Jones's argument conflicts with Supreme Court and other authority that stand for the proposition that, under the FAA, procedural issues relating to the arbitration should be decided in arbitration, not in court. *See John Wiley & Sons*, 376 U.S. at 557; *Howsam*, 537 U.S. at 84–85; *Wallrich*, 2024 WL 3249646, at *7 ("[P]rocedural issues, like fee disputes, are presumptively *not* for the judge, but for an arbitrator, to decide" (quotation marks omitted)); *Capstone Associated Servs., Ltd. v. Rivero*, 2013 WL 12140391, at *2 (S.D. Tex. Sept. 30, 2013) ("Disagreement with procedural aspects of arbitration [] does not entitle one to an order compelling arbitration.").

Jones's argument on appeal is also inconsistent with her counsel's own conduct, on behalf of her and her co-claimants, in the arbitration. Keller has repeatedly and voluntarily requested that the NAC construe

the Terms and the JAMS Rules in its clients' favor. *Supra* pp. 11–13. In view of the above, it strains credulity for Jones to criticize the district court for declining to arrogate to itself authority to decide this issue.

Moreover, even if the district court had reached the issue, the Terms do not prohibit consolidation, as JAMS correctly determined. Despite Jones's repeated attempts to conjure language that the Terms prohibit consolidation and "require 'individual, one-on-one' arbitrations," Blue Br. 13, the Terms do not contain the words "individual arbitration." 3-ER-496. Rather, as JAMS repeatedly concluded, a plain reading of the Terms shows that the Terms only prohibit claimants from bringing claims *on behalf of others*—not consolidation of individual arbitration demands. 3-ER-322–24.

The critical language in the Terms provides that "[User] and [STARZ] agree that each may bring claims against the other only in [user's] or its individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." 3-ER-496. Such a class or representative arbitration is entirely different than a consolidated arbitration. In a class or representative arbitration, an individual brings claims on behalf of *others*, typically people who are not

themselves active participants in the arbitration. In contrast, in a

consolidated arbitration, each individual claimant brings its "claims

against [STARZ] only in [its] individual capacity" and not on behalf of

any other claimant. 3-ER-496. Therefore, a claimant does not

participate in a "purported class or representative proceeding." 3-ER-

496. Nothing in the Terms prohibits consolidation. *Id.* To the contrary:

the Terms expressly authorize consolidation by stating that arbitrations

will be conducted and administered pursuant to the JAMS Rules—

including JAMS Rule 6(e), which expressly authorizes JAMS to

consolidate arbitrations. 3-ER-544.

When parties want to prohibit consolidation, they say so

expressly. There are countless examples of arbitration clauses that

expressly prohibit consolidation, including those of several other

streaming services. *See, e.g.*, Terms of Use, Netflix,

https://help.netflix.com/legal/termsofuse ("[U]nless both you and Netflix

agree otherwise, the arbitrator *may not consolidate* more than one

person's claims with your claims . . . ." (emphasis added)); Terms of Use,

HBO, https://www.hbo.com/ terms-of-use ("[U]nless both you and we

agree otherwise, the arbitrator *may not consolidate* more than one

person's claims . . . ." (emphasis added)). If STARZ had intended to prohibit consolidation, it would have said so. It did not.

Jones's reliance on *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348 (2011), and *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639 (2022), is misplaced. Jones incorrectly argues that the Terms "mirror" the arbitration agreement at issue in *Concepcion*, "where all agreed that the provision required bilateral arbitration." Blue Br. 32–33. But unlike here, the arbitration agreement in *Concepcion* expressly stated that "the arbitrator may not consolidate more than one person's claims." 563 U.S. at 336 n.2. Further, in *Concepcion*, and again in *Viking River*, the issue was only whether the FAA preempted certain California laws that conflicted with contractual waivers of *class and representative arbitrations*, not consolidation. *See* 563 U.S. at 352; 596 U.S. at 660–61. In both cases, the court and the parties therefore used the term "bilateral arbitration" to distinguish non-class and non-representative arbitrations from class and representative arbitrations. Applying that dichotomy, a consolidated arbitration is *not* a class or representative arbitration; it falls into the category of a traditional, bilateral arbitration, just with many similar individual claims pending before the

same arbitrator. *Concepcion* and *Viking River* do not support construing the Terms to prohibit consolidation.

Jones also raises a red herring by arguing that the structure of the Terms is a contract between "only two parties," Jones and STARZ. Blue Br. 33. The number of parties to a contract—whether there are two or twenty-two parties—is not relevant to whether the contract permits or prohibits consolidation. The Terms applicable to Jones and STARZ required Jones to bring any claim only on her own behalf and not on another's behalf. The Terms did not restrict consolidation of her claim with other similar disputes involving different contracts with identical terms.

Jones argues this Court construed "almost identical contractual features" in *Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697 (9th Cir. 2024), to require "individual, bilateral arbitration," Blue Br. 34–35. But the arbitration agreement in *Diaz* was actually completely different. In sharp contrast to the Terms here, the agreement in *Diaz* expressly provided that "'[t]he Arbitrator shall not consolidate claims of different associates into one proceeding'" and prohibited the arbitrator from "'hear[ing] an arbitration as a class or collective action.'" 101 F. 4th at

703. On those facts, the agreement's language was "strongly indicative of an intent to exclude any amalgamation of employees' claims." *Id.* at 704. Here, in contrast, the Terms do not even mention, let alone prohibit, "consolidate[d] claims" or "collective action[s]." Thus, they do not prohibit *any* amalgamation of individual claims; they only prohibit class and other representative actions.

Jones also string-cites a series of inapposite cases, seemingly in an attempt to imply that, by default, consolidated arbitration is prohibited unless expressly authorized in the parties' contract. *See* Blue Br. 36. But the Terms *do* expressly authorize consolidation, because they incorporate the JAMS Rules, which include Rule 6(e). And, in any event, each of the cases Jones cites is easily distinguished because it solely addresses *class* arbitration and does not address consolidation, a fundamentally different procedure. *See Nelsen v. Legacy Partners Residential, Inc.* 207 Cal. App. 4th 1115, 1119, 1129–31 (2012) (holding arbitration agreement did not encompass class arbitrations without considering or addressing consolidation); *Walker v. Scoobeez*, 2018 WL 11321932, at *3 (C.D. Cal. Aug. 22, 2018) (holding agreement prohibited class arbitration where there was no "basis for concluding that the

parties agreed to" it; no consideration or discussion of consolidation);

*Kinecta Alt. Fin. Sols., Inc. v. Superior Court*, 205 Cal. App 4th 506,

517–19 (Apr. 25, 2012) (holding agreement prohibited class arbitration

where it "made no reference to, and did not authorize, class arbitration

of disputes"; no consideration or discussion of consolidation),

*disapproved by Sandquist v. Lebo Automotive, Inc.*, 1 Cal. 5th 233, 260

(2016); *Cortez v. Doty Bros. Equip. Co.*, 15 Cal. App. 5th 1 (2017)

(holding agreement prohibited class arbitration where it "reveal[ed] no

discernible intent to permit" it; no consideration or discussion of

consolidation).

Finally, Jones's assertion that "contracts between two parties do

not grant outsiders a right of enforcement" is beside the point. Blue

Br. 37. Jones suggests that, by disqualifying arbitrators on behalf of its

own clients (Jones's co-claimants), *Keller* has stymied Jones's ability to

proceed with arbitration and thereby enforce her own contract. *See id.*

To the extent these disqualifications have stymied Jones in any way, it

is a problem of her counsel's own making. It has nothing to do with

"outsiders" trying to enforce the terms of Jones's contract. No one but

Jones is seeking to enforce *her* contract with STARZ. And that contract

expressly authorizes consolidation of her claims with other, similar claims.

### D.  California Law Permits Consolidation.

Next, Jones incorrectly argues that, even if the Terms permit consolidation, California law prohibits it because consolidation conflicts with Jones's "absolute right" to disqualify a proposed arbitrator under California Code of Civil Procedure Section 1281.91(b)(1). Blue Br. 37–39. Jones's argument fails for two reasons: (1) because there is no conflict; and (2) because Section 1281.91(b)(1) would be preempted by the FAA if there were a conflict.

#### 1.  There Is No Conflict Between Section 1281.91(b)(1) and Consolidation.

The right to disqualify arbitrators on the basis of their disclosure statements under Section 1281.91(b)(1) does not conflict with consolidation. As discussed more fully below, *see infra* Part II.C, in a consolidated arbitration, each party—including every claimant—retains the independent right to disqualify the arbitrator. Keller has repeatedly exercised this right on behalf of Jones and her co-claimants, and JAMS has honored every single one of those disqualifications. Consolidation in

no way deprived any claimant, including Jones, of his or her disqualification rights.

What Jones really seems to be arguing is that, in practice, if claimants in a consolidated proceeding engage in the cynical exercise of disqualifying arbitrators seriatim and in perpetuity (as Keller is currently doing), then they will deprive each other (and the respondent) of the ability to move forward with the arbitration. *See* Blue Br. 37–39. But that does not create a conflict with Section 1281.91(b)(1). The statute creates a right to *disqualify* arbitrators, not a right to *not* have arbitrators disqualified.

Jones's contrary interpretation of Section 1281.91(b)(1) leads to absurd outcomes. Even in a one-on-one arbitration, Jones's interpretation would allow any single party (including STARZ) to do exactly what Jones and her co-claimants have done collectively— namely, repeatedly disqualify arbitrators in perpetuity and prevent the arbitration from ever moving forward. The "problem" Jones has identified is not a problem with *consolidation*; it is a problem with Jones's interpretation of Section 1281.91(b)(1) to allow every party an

unlimited number of unreviewable, without-cause preemptive
arbitrator strikes.

In sum, Jones's argument is unfounded. Section 1281.91(b)(1) does
not conflict with consolidation.

### 2.    If Section 1281.91(b)(1) Conflicts with Consolidation, then the FAA Preempts It.

There is no reasonable dispute that under the FAA, "[p]arties may
negotiate for and include provisions for consolidation of arbitration
proceedings in their arbitration agreements." *Protective Life Ins. Corp.
v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir. 1989). If
Jones is correct that 1281.91(b)(1) interferes with that right, then under
the FAA, 1281.91(b)(1) must yield, because "[c]ourts may not . . .
invalidate arbitration agreements under state laws applicable *only* to
arbitration provisions." *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687
(1996). Section 1281.91(b)(1), by its terms, applies only to arbitration
provisions.

The "determinative question" in evaluating whether the FAA
preempts 1281.91(b)(1) "is whether [its] procedures conflict with the
FAA policy favoring the enforcement of arbitration agreements." *Cable
Connection, Inc. v. DIRECTV, Inc.*, 44 Cal. 4th 1334, 1352 (2008). As

the Supreme Court has explained, "an arbitration agreement is a specialized kind of forum-selection clause that posits not only the situs of suit *but also the procedure to be used in resolving the dispute.*" *Viking River*, 596 U.S. at 653 (emphasis added). If Section 1281.91(b)(1) prevents parties from voluntarily agreeing to "provisions for consolidation," then it necessarily conflicts with enforcement of "the procedure to be used in resolving the dispute." *See id.* Thus, it conflicts with the parties' arbitration agreement, and, accordingly, the FAA policy favoring enforcement of arbitration agreements. Hence, it is preempted.

The authorities Jones cites in favor of non-preemption do not rebut this argument. In none of those cases did a party argue, as Jones does here, that Section 1281.91(b)(1) conflicts with parties' voluntary agreement to allow for consolidation. *See* Blue Br. 38–39. Of course, that is because Section 1281.91(b)(1) does *not* conflict with consolidation, as discussed above. *Supra* Part I.D.1. But if it does conflict, then it is preempted under settled law.

### E.　The FAA Permits Consolidation.

Next, Jones argues that the FAA also bars "nonconsensual pre-arbitration consolidation." *See* Blue Br. 39–47. But the entire premise of Jones's argument is a straw man. By agreeing to the Terms, STARZ, Jones, and all other claimants consented to apply the JAMS Rules, including JAMS Rule 6(e). Under JAMS Rule 6(e), consolidation is permitted "[u]nless the Parties' Agreement or applicable law provides otherwise." The Terms and applicable law do not "provide[] otherwise." *Supra* Part I.C. Thus, STARZ, Jones, and all other claimants *expressly consented to JAMS consolidating their arbitrations with other, similar arbitrations*. And it is beyond reasonable dispute that under the FAA, "[p]arties may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements." *Protective Life*, 873 F.2d at 282. Whether or not the FAA bars "nonconsensual pre-arbitration consolidation" is irrelevant here.

Jones spends pages stitching together a litany of disparate, out-of-context quotes from different cases in an attempt to conjure some sort of presumption against consolidation under the FAA. But every single case Jones cites to addresses a different, and irrelevant situation:

- In *Stolt-Nielsen* and *Lamps Plus*, the Supreme Court held that class arbitration cannot be compelled when an arbitration agreement is silent or ambiguous as to whether the parties agreed to such a procedure. *Stolt-Nielsen S. A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010); *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 186 (2019). The Second Circuit held the same in *Shivkov*. 974 F.3d at 1069. Here, the parties' agreement is neither silent nor ambiguous about consolidation; it expressly allows consolidation under Rule 6(e).

- In *Concepcion* and *Viking River*, the Supreme Court held the FAA preempted certain California laws that conflicted with contractual waivers of class and representative arbitrations. *See* 563 U.S. at 352 (FAA preempts law that conflicts with contractual waivers of class arbitration); 596 U.S. at 660–61 (FAA preempts law that conflicts with contractual waivers of representative arbitration). Here, no one is seeking to enforce a state law that conflicts with any provision of the parties' agreement.

- 51 -

- In *U.K. v. Boeing Co.*, the Second Circuit held that a federal court could not compel consolidation of arbitrations where the agreement did not "contain[] any provision for consolidation" and the court "ha[d] no grounds to conclude that the parties consented to consolidated arbitration." 998 F.2d 68, 70 (2d Cir. 1993). The First Circuit held the same in *Protective Life*, and the *Ninth Circuit* held the same in *Weyerhaeuser Co. v. W. Seas Shipping Co. See* 873 F.2d at 282; 743 F.2d 635, 637 (9th Cir. 1984). Here, the parties' agreement incorporates a JAMS Rule that expressly permits consolidation.

Jones's class arbitration authorities are inapposite for the additional reason that class arbitration and consolidation are not similar procedures that raise "the same essential concerns." Blue Br. 44. In class arbitration, there are substantial due process concerns about absent class members that are inapplicable to consolidated proceedings, where each claimant is a full and present participant in the arbitration. Unlike class arbitration, in consolidated arbitration, each claimant brings his or her own claims on his or her own behalf, and no claimant

has the authority to assert or resolve a claim on behalf of any other claimant.

Moreover, the practical concerns that Jones raises—including that consolidation will result in an arbitrator "resolv[ing] many disputes between hundreds or perhaps even thousands of parties," the purported loss of privacy and confidentiality, and the "higher" commercial stakes, Blue Br. 44—are actually the consequence of Jones voluntarily electing to join a mass arbitration campaign organized by Keller, as opposed to pursuing claims against STARZ independently. Jones *chose* to file a boilerplate demand along with tens of thousands of other claimants who filed identical demands, *chose* to be jointly represented with those claimants, and *chose* to proceed in lockstep with them throughout the pre-arbitration process. From the outset, Jones accepted that she would be part of a massive, coordinated group of claimants.[5] The FAA does not entitle her to some sort of presumption against having her claims

---

[5] It is here that Keller's conflict of interest becomes particularly acute. In the event that Keller argues that, in fact, Apellant did *not* know her claim was part of a massive, coordinated group of claimants, it will raise a serious question as to Keller's candor with its clients about the manner in which the interests of some clients would be pitted against others, like Jones.

consolidated with the rest of that very same massive, coordinated group.

## II.     JAMS's Consolidation Rule Is Not Unconscionable.

### A.     The FAA Does Not Authorize Courts to Selectively Enforce Portions of Arbitration Agreements at the Request of a Petitioner.

Having found that Jones failed to demonstrate that she was an "aggrieved" party pursuant to Section Four of the FAA, the district court correctly dismissed the Petition without reaching whether the Terms' incorporation of JAMS Rule 6(e) is unconscionable. This Court should affirm on this basis alone.

Indeed, this Court *cannot* reach unconscionability, given the procedural posture of this case. Jones filed this action to compel arbitration under FAA Section 4. In other words, Jones seeks to *enforce* the very same arbitration agreement that Jones simultaneously seeks to have this Court declare partially unconscionable. But Section 4 does not allow a petitioner to pick and choose which provisions of an arbitration agreement to enforce. The only relief available under Section 4 is an "order directing the parties to proceed to arbitration *in accordance with the terms of the agreement.*" 9 U.S.C. § 4 (emphasis

added). Even if a term of that agreement is unconscionable, it is still a "term[] of the agreement" that must be enforced under that provision. Jones cites no authority supporting the notion that a party can use a Petition under Section 4 to seek *both* to enforce that agreement *and also* selectively to invalidate part of it.

Jones's sole citation for this novel proposition is the Supreme Court's *Concepcion* decision, *see* Blue Br. 48, but Jones's citation is highly misleading. Jones carefully quotes only part of a sentence, claiming that *Concepcion* holds the FAA's "'saving clause' permits the Court to invalidate *any part of an arbitration agreement* for any 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting 563 U.S. at 339) (emphasis added). But Jones made up the words "any part of an arbitration agreement" entirely. The full sentence conveys a very different meaning; stating that the "saving clause permits *agreements to arbitrate* to be invalidated by generally applicable contract defenses . . . ." *Concepcion*, 563 U.S. at 339 (emphasis added). In other words, all *Concepcion* stands for is the unremarkable proposition that under the FAA's savings clause, a court can decline to enforce an arbitration agreement—not that it can use a

Section 4 petition to edit the parties' arbitration agreement *at the request of the petitioner who is simultaneously seeking to enforce the very same agreement*.[6]

Thus, there is no basis for the Court to reach unconscionability. However, even if this Court were to reach it, JAMS Rule 6(e) is not procedurally or substantively unconscionable.

## B.    JAMS's Consolidation Rule Is Not Procedurally Unconscionable.

To determine whether an arbitration provision is procedurally unconscionable, courts focus on two factors: oppression and surprise. *See Fisher v. MoneyGram Int'l, Inc.*, 66 Cal. App. 5th 1084, 1094 (2021). Neither factor is present here.

To demonstrate oppression, a plaintiff must show "an inequality of bargaining power which results in no real negotiation and an absence of meaningful choice." *Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 631 (2015) (quotation and quotation marks omitted). Jones's

---

[6] The circumstances are obviously different when the petitioner seeks to enforce an arbitration agreement and the *respondent* contends terms in that agreement are unconscionable and cannot be enforced. In that situation, unconscionability is being used as a *defense* to a petition brought under Section 4, and courts can and do sever unconscionable provisions in those very different circumstances.

sole argument that the Terms' incorporation of the JAMS Rules
(including JAMS Rule 6(e)) is oppressive is that it was offered on "a
take-it-or-leave-it basis" and "never subject to negotiation." Blue Br. 49–
50. But JAMS Rule 6(e) is not some unique or one-sided procedural rule
that STARZ selectively incorporated into the Terms. Rather, STARZ
incorporated the *entirety* of the JAMS Rules, which are generally
applicable, neutral rules that JAMS, not STARZ, drafted to apply to *all*
arbitrations before JAMS. And JAMS Rule 6(e) just happens to be one
of those rules. JAMS Rule 6(e) was as much "take it or leave it" for
STARZ as it was for Jones.

Jones's suggestion that she suffered unfair oppression because she
had no meaningful opportunity to negotiate a particular subsection of
JAMS Rule 6, but that all the other JAMS Rules are fine, is absurd.
Courts have repeatedly rejected attempts to challenge incorporation of
JAMS-promulgated rules into arbitration agreements as unfair or one-
sided. *See, e.g.*, *Chee v. Tesla, Inc.*, 2024 WL 1898434, at *3–5 (N.D. Cal.
Apr. 30, 2024) (holding no oppression or surprise by mere incorporation
of JAMS Rules into arbitration agreement); *Styczynski v. MarketSource,
Inc.*, 340 F. Supp. 3d 534, 542 (E.D. Pa. 2018) (rejecting argument that

plaintiff is "disadvantaged" by JAMS rules and procedures for appointing arbitrators).

Further, where, as here, the contract is for non-essential, recreational activities, the subject of the contract weighs against a finding that the agreement is procedurally unconscionable—even in cases involving non-negotiated terms. *See, e.g., Pokrass v. The DirecTV Grp., Inc.*, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) (collecting cases). Just as DirecTV's "satellite-delivered television entertainment . . . is a nonessential recreational activity," *id.*, Jones's STARZ subscription entitles her to the nonessential recreational activity of "stream[ing] video content on the STARZ platform." 3-ER-465. Jones could obviously have chosen not to subscribe to STARZ's streaming service. This weighs against finding procedural unconscionability.

Jones also fails to show surprise. Jones claims that the Terms are surprising because they allegedly misled her to believe she was entitled to an "individual arbitration," and that only reviewing the "prolix" JAMS Rules would have disabused her of that possibility. But, in fact, the Terms, which are only one paragraph, do not use the phrase "individual arbitration," nor do they state that they prohibit

consolidation. To the extent Jones suffered any "surprise," it is because she misread the arbitration clause and made an unwarranted assumption, not because she had "reasonable expectation[s]" that were "disappointed." Blue Br. 50 (quotations omitted).

The cases that *Jones* cites are easily distinguishable. For example, in *Heckman v. LiveNation*, the court's procedural unconscionability finding focused on Ticket Master's and LiveNation's near-monopoly in the market for live entertainment, not the adhesive nature of the applicable agreement. *See* 2023 WL 5505999, at *5 (C.D. Cal. Aug. 10, 2023) ("Because Defendants are often in effect the only ticketing game in town, would-be concert goers are forced to accept Defendants' TOU in full, or else forego the opportunity to attend events altogether."). Likewise, in *Patterson*, plaintiffs "of modest means, some self-employed or temporarily jobless" lacked a "meaningful choice of reasonably available alternative sources" of personal loans from lenders who would not require NAF arbitration. *Patterson v. ITT Consumer Fin. Corp.*, 14 Cal. App. 4th 1659, 1664, 1667 (1993). Unlike these cases, Jones does not—and cannot—allege that STARZ is the only streaming service

available to consumers. Nor can she allege that consumers lack meaningful alternatives if they do not agree to the Terms.

Because neither oppression nor surprise is present here, the Terms' incorporation of JAMS Rule 6(e) is not procedurally unconscionable.

### C.  JAMS's Consolidation Rule Is Not Substantively Unconscionable.

Jones's sole argument for substantive unconscionability is that the JAMS consolidation procedure conflicts with Jones's supposed right under California Civil Procedure Code Section 1281.91(b)(1) "to select an arbitrator." Blue Br. 52. According to Jones, her rights under this statute are violated every time Keller (on behalf of any of the other claimants) disqualifies an arbitrator that she would prefer not to disqualify. *Id.* Putting aside that Jones's own counsel stands at the center of pitting one claimant against another, Section 1281.91(b)(1) does not actually confer on Jones a right "to select an arbitrator." Rather, Section 1281.91(b)(1) confers only a *waivable* right to *disqualify* an arbitrator. *See* Cal. Civ. Proc. Code § 1281.91(b)(1)–(c) (discussing disqualification and stating circumstances under which right can be waived).

There is no tension between the right to *disqualify* and consolidation. Under Section 1281.91(b)(1), any party to the arbitration can disqualify an arbitrator on the basis of his or her disclosure statement. Cal. Civ. Proc. Code § 1281.91(b)(1). In a consolidated arbitration, each party—including every claimant—*still* has that right. The fact that one claimant may disqualify an arbitrator that another claimant would prefer to keep is of no moment under Section 1281.91(b)(1). Indeed, the effect would be no different than if STARZ disqualified the very same arbitrator, which it unquestionably has the right to do.

This conclusion is consistent with *Roussos v. Roussos*, 60 Cal. App. 5th 962, 971 (2021), which Jones cites. *See* Blue Br. 52 (citing *Roussos* for the proposition that "California courts construe [Section 1281.91(b)(1)] to grant 'an absolute right to disqualify [an arbitrator] without cause.'"). In *Roussos*, the issue was whether the parties could "contract away" or limit the right to disqualify an arbitrator under Section 1281.91(b)(1). *See id.* at 967 ("[W]e conclude the parties cannot contract away California's statutory protections for parties to an arbitration, including mandatory disqualification of a proposed

arbitrator . . . ."). Here, *no one* has contracted away Jones's right to disqualify arbitrators. She has always had, and continues to have, that right.

Jones's overly expansive interpretation of Section 1281.91(b)(1) is also wrong because it would nullify entirely a different provision of the same law—Section 1281.3—in which the California Legislature expressly authorized consolidation of arbitrations. *See* Cal. Civ. Proc. Code § 1281.3. Under Jones's reading of Section 1281.91(b)(1), no arbitration governed by California law could ever be consolidated because it would interfere with each claimant's right to disqualify the arbitrator independently from any other claimant. Tellingly, Jones cites no authority in support—and that is because none exists. Such an interpretation violates basic principles of statutory construction by rendering all of Section 1281.3 surplusage. *See, e.g., Marx v. Gen. Rev. Corp.,* 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme."). Jones's interpretation also conflicts with California decisions that consolidated arbitrations are permissible. *See, e.g., Indep. Ass'n of Mailbox Ctr. Owners, Inc. v.*

- 62 -

*Superior Court,* 133 Cal. App. 4th 396, 410 (2005) ("[G]roup arbitration can be a valid means of dispute resolution where the statutory and case law criteria for consolidation are satisfied.").

Nor does analogizing to selective quotations from the district court's *Heckman* opinion support Jones's argument. *See* Blue Br. 53. Jones's quotation from *Heckman* is misleading, at best, because it is merely the court's restatement of plaintiffs' counsel's argument—not an adoption of that argument or an endorsed finding.[7] The *Heckman* defendants "d[id] not dispute that New Era's Rules violate these state law requirements," and the district court therefore took Jones's arguments as a given without ever evaluating them for merit. *See Heckman*, 2023 WL 5505999, at *15.

---

[7] *Compare* Blue Br. 53 (Jones arguing "the district court [in *Heckman*] found substantively unconscionable rules that abrogated those rights in part because, as here, 'each side, rather than each individual party, has a right to disqualify an arbitrator' and because 'a single arbitrator presides over several cases at one time' (quoting *Heckman*, 2023 WL 5505999, at *15)), *with Heckman*, 2023 WL 5505999, at *15 ("*Plaintiffs* point to three features of New Era's Rules *that they claim* violate California law: (1) New Era has the power to override a claimant's decision to disqualify an arbitrator; (2) each side, rather than each individual party, has a right to disqualify an arbitrator; and (3) a single arbitrator presides over several cases at one time." (emphases added)). Note also that Keller was plaintiffs' counsel in *Heckman*.

- 63 -

Further, the conflict between the provider's rules and state law that was present in *Heckman* does not exist here. In *Heckman*, the arbitration provider's rules expressly allowed the provider "to override a claimant's decision to disqualify an arbitrator." *Id.* Such a rule obviously conflicts with the "absolute right to disqualify" under Section 1281.91(b)(1). *See Heckman*, 2023 WL 5505999, at *15 (observing terms "purport[] to waive a nonwaivable right under California law"). In contrast, the Terms and the JAMS Rules provide no ability to override a party's right to disqualify an arbitrator, and thus are consistent with 1281.91(b)(1). 3-ER-538–58.

Finally, Jones wrongly suggests that the arbitrator selection process will go on forever unless some claimants "waive their statutory [disqualification] rights," which will then deprive Jones "and all claimants of any meaningful forum." Blue Br. 54. JAMS has already disproved Jones's suggestion that arbitrator selection will go on without end. Under California Civil Procedure Code Section 1281.6, "if the agreed method [to appoint an arbitrator] fails or for any reason cannot be followed, . . . the court, on petition of a party to the arbitration agreement, shall appoint the arbitrator." Here, after Keller disqualified

five appointed arbitrators in a row, JAMS declared the agreed appointment method a failure and directed Keller to petition a court for arbitrator appointment. Further, when an arbitrator is appointed by a court, California law provides that "[a] party shall have the right to disqualify one court-appointed arbitrator without cause," and must "petition the court to disqualify a subsequent appointee only upon a showing of cause." Cal. Civ. Proc. Code § 1281.91(b)(2). Thus, Jones and her co-claimants cannot continue to disqualify arbitrators without cause indefinitely. There *will* be an end point to Keller's delay in the arbitration proceeding.

Because consolidation does not conflict with California law, Jones fails to demonstrate that the Terms' incorporation of JAMS Rule 6(e) is substantively unconscionable.

## III. The *Discover Bank* Rule Is Preempted and Does Not Apply.

Jones's fallback position that the Terms' class action waiver is unconscionable under the California Supreme Court's "*Discover Bank* rule" (Blue Br. 54–55) lays bare that this appeal has absolutely nothing to do with obtaining an "individual, bilateral arbitration." If Jones's *Discover Bank* argument were to succeed, then the result would not be

- 65 -

"individual, bilateral arbitration"—it would simply open the door to Jones and her thousands of co-claimants *to pursue a class action in court*, where Jones would have *none of the rights she claims she is being denied in consolidated arbitration*. She would have no right to proceed independently from other claimants (the premise of a class action is exactly the opposite) and would have no right to "select" her judge or disqualify those judges seriatim. In making this argument, *Jones*—and not STARZ—is asking this Court to allow a class action.

Jones's argument fails. As Jones concedes, the Supreme Court held in *Concepcion* that the "*Discover Bank* rule is pre-empted by the FAA." *Concepcion*, 563 U.S. at 352. Before *Concepcion*, the *Discover Bank* rule provided that class action waivers in arbitration agreements found in consumer contracts are generally unconscionable. *See Discover Bank v. Superior Court*, 36 Cal. 4th 148, 162–63 (2005). In *Concepcion*, the Supreme Court held that the FAA preempts the *Discover Bank* rule because it "interferes with arbitration" by allowing "any party to a consumer contract to demand [a classwide arbitration] *ex post*." 563 U.S. at 346. The *Discover Bank* rule was thus inconsistent with the FAA's "principal purpose . . . to ensure that private arbitration

agreements are enforced according to their terms." *Id.* at 343 (quotation marks and brackets omitted). Jones's argument that the *Discover Bank* rule nonetheless "independently invalidates the Terms" and "permits a class action" squarely contradicts binding Supreme Court precedent. *See* Blue Br. 55.

Recognizing this obstacle, Jones advances an implausibly narrow reading of *Concepcion* by claiming that the FAA only preempts the *Discover Bank* rule as to arbitration agreements that provide for "traditional, informal, bilateral arbitration." Blue Br. 59. According to Jones, the FAA does not preempt the *Discover Bank* rule as applied to agreements for "class, group, representative, or consolidated arbitration." *Id.* at 58. That is not what *Concepcion* holds.

*Concepcion* stands for the simple premise that "[a]rbitration is a matter of contract, and the FAA requires courts to honor parties' expectations." 563 U.S. at 351. In other words: arbitration agreements must be enforced according to their terms—*including if they allow for consolidation*. What *Concepcion* prohibits is a state law (or judicial rule, in the case of *Discover Bank*) that "manufacture[s]" a basis for class arbitration that is not reflected in the parties' contract. *Id.* at 348. The

*Concepcion* observation that class arbitration "is not arbitration as envisioned by the FAA" was merely to explain why such arbitration "may not be *required* by state law." *Id.* at 351 (emphasis added). That reasoning is irrelevant here because the issue is not compulsory class arbitration under state law, but an *agreement between the parties* that permits consolidated arbitration. The FAA expressly requires courts to enforce such arbitration agreements "according to their terms." *Id.* at 344. *Concepcion* does not hold otherwise.

The later decisions cited by Jones do not change this conclusion. In *Viking River*, the Supreme Court reaffirmed that state law cannot "circumscribe the freedom of parties to determine 'the issues subject to arbitration' and 'the rules by which they will arbitrate.'" *Viking River*, 596 U.S. at 659. In *Hodges v. Comcast Cable Comm'cns, LLC*, this Court held that California law cannot invalidate arbitration agreements if they purport to waive a party's right to seek public injunctive relief in any forum. *See* 21 F. 4th 535, 539 (9th Cir. 2021). These cases invalidated state laws like the *Discover Bank* rule that attempted to coerce particular arbitration terms. Jones seeks the opposite: to invalidate parts *of an arbitration clause* under state law *because* the

clause contains a particular arbitration term. That is the very thing that each of these cases rejected. Jones's attempt to twist precedent holding that the terms of an arbitration clause should be enforced into precedent requiring the Court to decline to enforce the terms of an arbitration clause is extraordinary.

Finally, the *Discover Bank* rule *does* conflict with the FAA as applied to arbitration agreements that allow for consolidation. Jones's argument that there is no conflict is nothing more than a rehash of its argument, refuted above, that the FAA bars consolidation. The FAA requires enforcement of the terms of arbitration agreements regardless of whether or not they allow for consolidation. *Supra* Part I.E. Accordingly, it preempts the *Discover Bank* rule as applied to such agreements. *Cf., e.g.*, *Viking River*, 596 U.S. at 651 ("[A] party may not be compelled under the FAA to submit to class arbitration *unless there is a contractual basis for concluding that the party agreed to do so*." (quotation marks omitted) (emphasis added)).

## IV. The JAMS Rules Are Not Severable.

Finally, if the Court holds as unconscionable the Terms' incorporation of JAMS Rule 6(e), then the entire arbitration provision is

unenforceable. California courts hold entire arbitration agreements unenforceable when "the only way to cure the unconscionability is 'in effect to rewrite the agreement,' since courts 'cannot cure contracts by reformation or augmentation.'" *Ajamian v. CantorCO2e, L.P.*, 203 Cal. App. 4th 771, 803 (2012) (quotations and quotation marks omitted).

Here, the Terms incorporate the generally applicable JAMS Rules in their entirety, and the Parties expressly agreed that their arbitration would be administered in accordance with those rules. *See* 3-ER-496. The Rules were drafted by an independent, disinterested organization and operate collectively to further the objectives of arbitration. Consolidation is one essential component of those rules: it promotes fairness, efficiency, and consistency of decision-making among similarly situated claimants and issues.

By striking just Rule 6(e) while leaving the other JAMS Rules intact, this Court would in effect be creating an entirely different arbitration process than the one the parties agreed to. It would transform a single consolidated arbitration into tens of thousands of individual arbitrations that cannot be practicably arbitrated. Among the practical impediments to arbitrating tens of thousands of claims

separately is that JAMS has fewer than 500 arbitrators on its roster.

*See https://www.jamsadr.com/neutrals/* (listing 483 neutrals). Even in

the most optimistic of scenarios, tens of thousands of arbitrations

cannot proceed in parallel, and separately arbitrating each claimant's

claims would require many claimants to wait years, if not decades, for a

hearing. It would place a massive and completely unnecessary burden

not only on STARZ, but also on Keller, the arbitrators, and JAMS.

Because this selective excision would constitute impermissible

reformation of the parties' agreement, JAMS Rule 6(e) is not severable

from the JAMS Rules. If the Court is inclined to strike JAMS Rule 6(e),

then it must strike the entire arbitration agreement.

## CONCLUSION

STARZ and Jones have been arbitrating before JAMS since 2023,

and at no point has STARZ failed, neglected, or refused to arbitrate.

JAMS's decision to consolidate Jones's claims with other, identical

claims was within the scope of its authority, allowed by the STARZ

Terms and the JAMS Rules, not violative of California or federal law,

and not for the district court to disturb. Consolidation by an arbitration

administrator of claims that involve common issues of law or fact is a

fair and appropriate way to handle Jones's and her co-claimants' claims

and is not unconscionable.

     This Court should affirm.


                        Respectfully submitted,

Dated: July 22, 2024         DLA PIPER LLP (US)


                  By:    */s/ Jeffrey E. Tsai*
                        Jeffrey E. Tsai (SBN CA-226081)
                        555 Mission Street, Suite 2400
                        San Francisco, CA 94105
                        T: 415.836.2500
                        E: jeff.tsai@dlapiper.com

                        Angela C. Agrusa (SBN CA-131337)
                        2000 Avenue of the Stars
                        Suite 400 North Tower
                        Los Angeles, CA 90067
                        T: 310.595.3000
                        E: angela.agrusa@dlapiper.com

                        David Horniak (SBN CA-268441)
                        500 Eighth Street, NW
                        Washington, D.C. 20004
                        T: 202.799.4000
                        E: david.horniak@dlapiper.com

                        Attorneys for Respondent-Appellee
                        STARZ ENTERTAINMENT, LLC

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 24-1645

I am the attorney or self-represented party.

**This brief contains** | 13,374 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [        ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Jeffrey E. Tsai | **Date** | July 22, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**                                                            *Rev. 12/01/22*