Case No. 24-1645

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KIANA JONES,

Petitioner-Appellant,

v.

STARZ ENTERTAINMENT, LLC,

Respondent-Appellee.

Appeal from the United States District Court
for the Central District of California,
Eastern Division
The Honorable Kenly Kiya Kato Presiding
Case No. 5:24-cv-00206-KK-DTB

## REPLY BRIEF FOR PETITIONER-APPELLANT

Warren D. Postman
   *Counsel of Record*
Albert Young Pak
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W.,
Suite 1100
Washington, DC 20036
(202) 918-1123
wdp@kellerpostman.com
albert.pak@kellerpostman.com

Nicole Berg
KELLER POSTMAN LLC
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
(312) 280-5790
ncb@kellerpostman.com

Kiran Bhat
KELLER POSTMAN LLC
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, FL 33134
(305) 845-4684
kiran.bhat@kellerpostman.com

*Attorneys for Petitioner-Appellant*

# TABLE OF CONTENTS

Table of Contents ...................................................................... i

Table of Authorities ................................................................ ii

Introduction .............................................................................. 1

Argument .................................................................................. 4

I.  The District Court Erred In Finding That Kiana Was Not "Aggrieved" By Starz's Refusal To Arbitrate ................................. 6

    A.  The Terms Require the Arbitrator, Not an Administrator, To Resolve Disputed Consolidation. ....................................... 7

    B.  The Terms and Law Bar Consolidation, and Any Fair Consideration of the Issue Calls for Legal Analysis. ........... 14

    C.  Starz's Counterarguments Are Unpersuasive ..................... 19

II.  Alternatively, The District Court Erred In Not Severing the Unconscionable Provision Depriving Kiana Of A Forum ............. 25

    A.  The Contract of Adhesion's Imposition of an Effective Liability Waiver Is Procedurally Unconscionable. ............... 26

    B.  Forcing Amalgamation of the CAA Disqualification Right Is Substantively Unconscionable. ........................................ 28

    C.  Consolidated Multiparty Arbitrations Cannot Coexist with Class Action Waivers Under *Discover Bank*. ....................... 32

    D.  Courts May Sever Provisions Incorporated into Contracts Just Like Any Other. ......................................................... 34

Conclusion ............................................................................... 36

Certificate of Compliance ....................................................... 38

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajamian v. CantorCO2e, L.P.*,
    137 Cal. Rptr. 3d 773 (Ct. App. 2012) .......................................... 34, 35

*Am. Exp. Co. v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ................................................................................... 15

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
    6 P.3d 669 (Cal. 2000) ............................................................................... 35

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ................................................... 15, 19, 32, 34

*Azteca Constr., Inc. v. ADR Consulting, Inc.*,
    18 Cal. Rptr. 3d 142 (Ct. App. 2004) .......................................... 16, 29

*Bedgood v. Wyndham Vacation Resorts, Inc.*,
    88 F.4th 1355 (11th Cir. 2023) ....................................... 13, 14, 21, 22

*Chee v. Tesla Inc.*,
    --- F. Supp. 3d ---, No. 24-CV-00180-TSH, 2024 WL
    1898434 (N.D. Cal. Apr. 30, 2024) ............................................... 26, 27

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ............................................................... 20

*Ciccio v. SmileDirectClub, LLC*,
    2 F.4th 577 (6th Cir. 2021) ............................... 3, 4, 11, 13, 14, 20, 21

*Coinbase, Inc. v. Suski*,
    144 S. Ct. 1186 (2024) ............................................................... 1, 3, 4

*Diaz v. Macys W. Stores, Inc.*,
    101 F.4th 697 (9th Cir. 2024) ............................................................... 16

*Epic Sys. Corp. v. Lewis*,
    584 U.S. 497 (2018) ................................................................................... 15

ii

*Flores v. Transamerica HomeFirst, Inc.*,
   113 Cal. Rptr. 2d 376 (Ct. App. 2001) ................................................ 27

*Graham v. Scissor-Tail, Inc.*,
   623 P.2d 165 (Cal. 1981) ....................................................................... 26

*Heckman v. Live Nation Ent., Inc.*,
   686 F. Supp. 3d 939 (C.D. Cal. 2023) ................................... 17, 28, 29

*Honeycutt v. JPMorgan Chase Bank, N.A.*,
   236 Cal. Rptr. 3d 255 (Ct. App. 2018) ............................................... 31

*Howsam v. Dean Witter Reynolds, Inc.*,
   537 U.S. 79 (2002) ......................................................................... 11, 20

*Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Super. Ct.*,
   34 Cal. Rptr. 3d 659 (Ct. App. 2005) ................................................. 31

*John Wiley & Sons, Inc. v. Livingston*,
   376 U.S. 543 (1964) ............................................................................... 20

*Kalasho v. BMW of N. Am., LLC*,
   520 F. Supp. 3d 1288 (S.D. Cal. 2021) .......................................... 17, 18

*Kleveland v. Chicago Title Ins. Co.*,
   46 Cal. Rptr. 3d 314 (Ct. App. 2006) ................................................. 34

*Lamps Plus, Inc. v. Varela*,
   587 U.S. 176 (2019) ............................................................................... 19

*Lang v. PTC, Inc.*,
   Civ. No. 21-04451 (KM) (ESK), 2021 WL 5277190 (D.N.J.
   Nov. 12, 2021) .................................................................................. 22, 23

*Lhotka v. Geographic Expeditions, Inc.*,
   104 Cal. Rptr. 3d 844 (Ct. App. 2010) .......................................... 27, 28

*Marx v. Gen. Revenue Corp.*,
   568 U.S. 371 (2013) ................................................................................. 9

*Meyer v. Kalanick*,
   185 F. Supp. 3d 448 (S.D.N.Y. 2016) .................................................. 32

iii

*Mohamed v. Uber Techs., Inc.*,
  848 F.3d 1201 (9th Cir. 2016) ............................................................ 20

*Nagrampa v. MailCoups, Inc.*,
  469 F.3d 1257 (9th Cir. 2006) ............................................................ 27

*Noble Cap. Fund Mgmt., LLC v. U.S. Cap. Glob. Inv. Mgmt., LLC*,
  31 F.4th 333 (5th Cir. 2022) ...................................................... 22, 25

*Patrick v. Running Warehouse, LLC*,
  93 F.4th 468 (9th Cir. 2024) ............................................................. 20

*Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*,
  873 F.2d 281 (11th Cir. 1989) ........................................................... 18

*Roussos v. Roussos*,
  275 Cal. Rptr. 3d 196 (Ct. App. 2021) .................................. 16, 29, 30

*Shivkov v. Artex Risk Sols., Inc.*,
  974 F.3d 1051 (9th Cir. 2020) ........................................................... 11

*Sonic-Calabasas A, Inc. v. Moreno*,
  311 P.3d 184 (Cal. 2013) ................................................................... 33

*Steffanie A. v. Gold Club Tampa, Inc.*,
  No. 8:19-cv-3097-T-33TGW, 2020 WL 4201948 (M.D. Fla. July 22, 2020) .......................................................................... 22, 24

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
  559 U.S. 662 (2010) .................................................................... 15, 19

*Styczynski v. MarketSource, Inc.*,
  340 F. Supp. 3d 534 (E.D. Pa. 2018) ................................................. 27

*Szetela v. Discover Bank*,
  118 Cal. Rptr. 2d 862 (Ct. App. 2002) .............................................. 28

*United Kingdom v. Boeing Co.*,
  998 F.2d 68 (2d Cir. 1993) ................................................................ 18

iv

*Viking River Cruises, Inc. v. Moriana*,
  596 U.S. 639 (2022) .................................................................. 15, 19, 33

*Vital Pharms. Inc. v. PepsiCo Inc.*,
  No. CV-22-00591-PHX-DLF, 2022 WL 2176528 (D. Ariz.
  June 16, 2022) ............................................................................... 22, 24

*Wallrich v. Samsung Elecs. Am., Inc.*,
  106 F.4th 609 (7th Cir. 2024) ...................................................... 22, 24

*Weyerhaeuser Co. v. W. Seas Shipping Co.*,
  743 F.2d 635 (9th Cir. 1984) .............................................. 8, 13, 15, 18

## Statutes

9 U.S.C. § 4 ........................................................................................... 5

Cal. Civ. Code § 1670.5(a) ............................................................. 25, 35

Cal. Civ. Proc. Code § 1281.3 ............................................................. 31

Cal. Civ. Proc. Code § 1281.91 ........................................................... 29

Cal. Civ. Proc. Code § 1281.91(b)(1) .............................................. 16, 29

Cal. Civ. Proc. Code § 1281.91(c) ....................................................... 29

## Other Authorities

Cal. R. Ct. Ethics Standard 12(b) ...................................................... 30

Cal. R. Ct. Ethics Standard 12(b)(3) .................................................. 30

Cal. R. Ct. Ethics Standard 7 ............................................................. 30

Christopher K. Poole, *Focus on Neutrality: What You Need to
  Know About JAMS,* JAMS ADR Insights (June 25, 2020),
  https://www.jamsadr.com/blog/2020/focus-on-neutrality-
  what-you-need-to-know-about-jams ................................................ 12

## INTRODUCTION

Arbitration is fundamentally a matter of contract. *See Coinbase, Inc. v. Suski*, 144 S. Ct. 1186, 1192 (2024). Under the Federal Arbitration Act, courts are obliged to enforce arbitral agreements according to their terms. Starz and Kiana Jones disagree about whether their arbitration agreement permits consolidated proceedings that make Kiana's right to arbitrate contingent on the decisions of thousands of other aggrieved consumers. Under the unambiguous terms of the arbitration agreement here, that contractual dispute must be resolved by an *arbitrator*. Starz refuses to submit that threshold dispute to arbitration, necessitating judicial relief. That JAMS *administrators* are abetting Starz's refusal to arbitrate makes no difference. Administrators are not arbitrators. They have no authority from the parties to interpret disputed provisions of the contract. Kiana's motion to compel did not rest on Starz's refusal to submit her dispute to administration. It rested on Starz's refusal to arbitrate. That refusal required a judicial remedy that the district court improperly denied.

The JAMS Rules that Starz and Kiana incorporated into the Terms, 3-ER-539–55, "govern binding *Arbitrations* of disputes or claims that are

1

*administered* by JAMS." 3-ER-542 (JAMS Rule 1(a)) (emphases added). The "Arbitration *shall* be conducted by one neutral *Arbitrator*." 3-ER-544 (JAMS Rule 7(a)) (emphases added). "Once appointed, the *Arbitrator shall* resolve disputes about the interpretation . . . of these Rules." 3-ER-546 (JAMS Rule 11(a)) (emphasis added). "Jurisdictional and arbitrability disputes, *including* disputes over the . . . interpretation . . . of the agreement . . . and who are proper Parties to the Arbitration, *shall* be submitted to and ruled on by the *Arbitrator*." *Id.* (JAMS Rule 11(b)) (emphases added).

Ignoring these provisions, JAMS administrators took it upon themselves to resolve "disputes about the . . . interpretation . . . of these Rules." *Id.* (JAMS Rule 11(a)). JAMS Rules permit administrator-led consolidation "[u]nless the Parties' Agreement or applicable law provides otherwise." 3-ER-544 (JAMS Rule 6(e)). Kiana maintains that the Terms and law *do* provide otherwise, Petitioner-Appellant's Opening Brief ("POB") at 32-47, and Starz resists that interpretation of the Terms and the law, Respondent-Appellee's Answering Brief ("RAB") at 39-50. There is thus a clear-cut "dispute[] over the . . . interpretation . . . of the agreement . . . and who are proper Parties to the Arbitration" and the

"interpretation" of JAMS Rules. 3-ER-546 (JAMS Rule 11(b)). That dispute must be "submitted to and ruled on by the Arbitrator." *Id.*

By goading JAMS administrators into consolidating Kiana's case with thousands of others involving non-parties to the Terms, and then into conditioning Kiana's right to an arbitrator on the independent choices these non-parties made, Starz disemboweled its arbitration agreement with Kiana. *See Ciccio v. SmileDirectClub, LLC*, 2 F.4th 577, 584 (6th Cir. 2021) ("[I]f the administrator was independently interpreting the Agreement, he erred because the parties contracted for an arbitrator (not an administrator) to do so."). Ignoring all context, Starz now claims that this is what the parties contemplated all along.

The district court's acceptance of Starz's position compounded the injustice. The court denied Kiana's motion to compel arbitration by holding uncritically that the question of consolidation was presumptively for the arbitrator Starz had already blocked Kiana from reaching. The district court missed that the core dispute was not over the "first-order" merits or the "second-order" question of consolidation. Instead, the dispute was over the "third-order" question of "who should have the primary power to decide the second matter." *See Coinbase*, 144 S. Ct. at

3

1192-93 (citation omitted). "Under contract principles, these . . . third-order questions are also matters of consent." *Id* at 1193.

The parties consented to an arbitrator, not an administrator, deciding this issue. The Court should interpret the Terms and send this matter to the arbitrator as the parties agreed. *See Ciccio*, 2 F.4th at 582 ("The text of the Agreement confirms that the parties didn't intend to allow an administrator to short-circuit arbitration . . . ."). And if Starz's interpretation of the Terms permitting the failed process is correct, the Court should perform the requisite unconscionability analysis and sever the provision Starz exploited to grind proceedings to a halt. Either way, the Court should end the procedural morass and reverse.

## PERTINENT AUTHORITIES

All pertinent statutory provisions and rules that appear in this brief were included in the Addendum to the POB or the Addendum to the RAB.

## ARGUMENT

The Court should reverse and remand with instructions to grant Kiana's motion to compel arbitration for two alternate reasons.

*First*, the district court erred in approving Starz's refusal to arbitrate. The main dispute was not "over whether the Terms permit

4

consolidation" as Starz contends, RAB at 36, but over *who gets to decide* that question. The Terms provide an unambiguous answer: an arbitrator. Administrators only have limited preliminary authority to consolidate "[u]nless the Parties' Agreement or applicable law provides otherwise." 3-ER-544 (JAMS Rule 6(e)). Interpreting the Terms and law to determine whether they provide otherwise, as Kiana contends they do, is unquestionably a matter for an arbitrator. 3-ER-546 (JAMS Rule 11). There is no carveout from Rule 11(a)'s express delegation to an arbitrator for interpretations of Rule 6(e), or for application of legal principles that could bear on Rule 6(e). By taking it upon themselves to resolve the parties' dispute, JAMS administrators usurped the role of the arbitrator. The district court owed no deference to this extra-contractual usurpation. To the contrary, it was obliged to enforce the parties' agreement and send the dispute to the proper decision maker: an arbitrator. 9 U.S.C. § 4.

*Second*, assuming JAMS Rule 6(e) permitted the administrator-ordered consolidation here, the district court erred in failing to find that provision unconscionable and to sever it. On procedural unconscionability, Starz imposed JAMS Rule 6(e) as the party with superior bargaining power based on an interpretation that, at minimum,

5

is debatable. On substantive unconscionability, Starz imposed an amalgamated disqualification right in plain conflict with California law, even if it did not write an express waiver of that right into the contract. And in violation of the *Discover Bank* rule, Starz claimed the benefits of FAA preemption while imposing a complex multiparty proceeding that turned out not to be arbitration at all. All three features render JAMS Rule 6(e) unconscionable. The proper course would have been to sever.

## I. The District Court Erred In Finding That Kiana Was Not "Aggrieved" By Starz's Refusal To Arbitrate.

Starz says it did not refuse to arbitrate because it cooperated in JAMS's administration of Kiana's and others' demands. RAB at 23-25. But taking preliminary steps that demonstrate a *willingness* to arbitrate in a consolidated proceeding can still constitute a *refusal* to arbitrate the *threshold* issue of whether consolidation is legally and contractually appropriate. Because Starz knew full well that Kiana believes consolidation is legally and contractually forbidden, the preliminary steps it took to proceed in consolidated fashion were merely designed to ensure that *no arbitration* occurs on the threshold issue. JAMS administrators played along by exceeding their contractual authority. That has resulted in pre-arbitration stasis, which is exactly what a

6

federal court is supposed to cut through under 9 U.S.C. § 4. Instead of taking up the interpretive dispute over whom the Terms granted authority to decide the disputed question of consolidation, the district court denied Kiana's petition without sufficient explanation. The most natural reading of the Terms is that the arbitrator, not an administrator, decides a disputed consolidation. Though Starz's arguments for consolidation are wrong, the mere existence of the legal dispute deprived JAMS administrators of any authority to decide. Starz's textual arguments to the contrary are unpersuasive. And the cases on which Starz relies are distinguishable because they involve facts in which administrators acted within their contractual authority.

## A. The Terms Require the Arbitrator, Not an Administrator, To Resolve Disputed Consolidation.

Starz once argued that "JAMS is not a judge or an appointed arbitrator; it is a third-party provider of dispute resolution services." 2-ER-227. Now, Starz argues that the Terms gave JAMS administrators the right to make several legal determinations which stymied Kiana's arbitration.

The Terms confirm Starz's original position. Starz agreed to separate Terms with Kiana and with each of the thousands of other

consumers whose cases JAMS administrators consolidated into Kiana's case. But this Court expressly prohibits consolidation where "[e]ach agreement contains its own arbitration clause and each clause requires only arbitration between the parties to the agreement." *Weyerhaeuser Co. v. W. Seas Shipping Co.*, 743 F.2d 635, 637 (9th Cir. 1984) (holding that courts may not "order consolidation in the absence of consent").

The only possible justification for entrusting the consolidation decision to administrators, not arbitrators, is JAMS Rule 6(e), which gives administrators limited preliminary authority to consolidate "[u]nless the Parties' Agreement or applicable law provides otherwise." 3-ER-544. Whether the contract and the law "provide otherwise" is a question over which parties can disagree. When they do, the JAMS Rules dictate that arbitrators, not administrators, resolve the dispute. 3-ER-546 (JAMS Rule 11). Even disputes about Rule 6(e) itself must be decided by an arbitrator. *Id.*

Had the parties wanted to give JAMS *administrators* the authority to decide disputed threshold disagreements over consolidation, they could have done so by stating that "unless *JAMS decides* that the Parties' Agreement and the law provides otherwise, JAMS" may consolidate.

8

Starz's contention that Rule 6(e)'s actual wording is an unimportant quibble over sentence structure, RAB at 32-34, begs the question of why JAMS Rule 6(e) even includes a prefatory clause. Either administrators lack authority to decide a disputed consolidation because the remainder of the Terms reserve legal disputes to the arbitrator, or the prefatory clause serves no purpose because JAMS administrators decide consolidation in all circumstances. *See Marx v. Gen. Revenue Corp.,* 568 U.S. 371, 385 (2013) ("[T]he canon against surplusage . . . 'assists only where a competing interpretation gives effect to every clause and word of a statute.'" (citation omitted)).

Starz agrees that the prefatory clause of JAMS Rule 6(e) requires *someone* to resolve a disputed consolidation. But to Starz, a comparison to four adjacent provisions of the JAMS Rules indicates that that someone is a JAMS administrator. RAB at 32-33. Not so. One of Starz's cited provisions contains no comparable prefatory clause at all. 3-ER-543 (JAMS Rule 6(a)). The three others contain limiting prefatory clauses that only illustrate the flaw in Starz's interpretation. *Id.* (JAMS Rule 6(b)) ("*If no Arbitrator has yet been appointed, at the request of a Party and in the absence of Party agreement,* JAMS may determine the location

9

of the Hearing" (emphasis added)); 3-ER-544 (JAMS Rule 6(c)) ("*If, at any time, any Party has failed to pay fees or expenses in full*, JAMS may order the suspension or termination of the proceedings" (emphasis added)); 3-ER-544 (JAMS Rule 6(d)) ("*If the Parties wish to have any documents returned to them*, they must advise JAMS in writing" (emphasis added)). Certainly, JAMS Rule 6(b) does not give JAMS administrators the authority to "determine the location of a hearing" if the arbitrator has already been appointed, if no party requests JAMS to determine the location of a hearing, or if the parties agree on a hearing location. Likewise, JAMS Rule 6(c) does not give JAMS administrators the authority to suspend or terminate proceedings when all parties have paid fees and expenses in full. And JAMS Rule 6(d) has no import where the parties do not wish to have documents returned to them.

Although disputes over such prefatory matters—for example, whether "no Arbitrator has yet been appointed" or whether a party "has failed to pay fees or expenses in full"—would be silly and unfortunate, the administrative nature of such disputes (akin to whether a judge has been assigned to a case or whether a party has paid a court filing fee) makes evident that they are fit for an administrator to decide. That

10

stands in contrast to the weighty legal decisions—issues of contract interpretation and governing law—Starz wrongly insists that JAMS Rule 6(e) gives administrators authority to make.

That the parties would draft the Terms to leave such a crucial and complex legal decision to administrators instead of the arbitrator makes no sense. "Contract interpretation is a legal question." *Ciccio*, 2 F.4th at 585 (citation omitted). "That's one reason why arbitrability is 'for a court to decide' unless the parties clearly and unmistakably intend otherwise." *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-85 (2002)); *see also Shivkov v. Artex Risk Sols., Inc.*, 974 F.3d 1051, 1066–67 (9th Cir. 2020) (holding that class arbitration is a gateway issue presumptively for a court to decide in the absence of clear intent to delegate). "So it generally wouldn't make sense to require clear intent to delegate arbitrability questions to an arbitrator but then allow either arbitrators or administrators to decide that legal question." *Ciccio*, 2 F.4th at 585. That JAMS administrators are a committee of arbitrators selected by JAMS does not convert those administrators into the "one neutral Arbitrator" whom the parties select to conduct their "Arbitrations

11

of disputes or claims" and to whom the parties submit legal disputes. 3-ER-542, 544, 546 (JAMS Rules 1(a), 7(a), 11(b)).[1]

The most natural reading of the Terms is that the arbitrator decides a disputed consolidation, which is fundamentally a legal question of contract interpretation and arbitrability. The JAMS Rules govern "*Arbitrations* of disputes or claims that are *administered* by JAMS." 3-ER-542 (JAMS Rule 1(a)) (emphases added). The "Arbitration *shall* be conducted by one neutral *Arbitrator*." 3-ER-544 (JAMS Rule 7(a)) (emphases added). Interpretation of the JAMS Rules are reserved to the arbitrator. 3-ER-546 (JAMS Rule 11(a)) ("Once appointed, the Arbitrator shall resolve disputes about the interpretation and applicability of these Rules . . . .").

Starz points out that arbitrators don't have interpretive authority until appointed, RAB at 34-35, but this does not justify JAMS

---

[1] To allow parties to evaluate potential arbitrators, JAMS publicly lists "[c]ase information for the past five years—including . . . arbitrator names, case results, and the number of arbitrations and mediations JAMS has had . . . ." Christopher K. Poole, *Focus on Neutrality: What You Need to Know About JAMS,* JAMS ADR Insights (June 25, 2020), https://www.jamsadr.com/blog/2020/focus-on-neutrality-what-you-need-to-know-about-jams. JAMS is less transparent about the identities and decisions of JAMS administrators, who face heightened institutional and financial incentives to maintain business from companies like Starz.

administrators' seizing authority the contract does not confer. *See Ciccio*, 2 F.4th at 584 ("the administrator helps disputes get to an arbitrator and doesn't make merits rulings"); *Bedgood v. Wyndham Vacation Resorts, Inc.*, 88 F.4th 1355, 1364 n.5 (11th Cir. 2023) ("merits-based issues [are] reserved to the arbitrator, issues over which the administrator retains no authority"); *Weyerhaeuser*, 743 F.2d at 637 (even courts may not "order consolidation in the absence of consent"). That is doubly true where extra-contractual administrator decisions lead, as they did here, to the arbitrator never being appointed at all.

Most significantly, "arbitrability disputes, *including* disputes over the . . . interpretation . . . of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, *shall* be submitted to and ruled on *by the Arbitrator*." 3-ER-546 (JAMS Rule 11(b)) (emphases added). The initial clause of JAMS Rule 11(b) does not exclude consolidation, Rule 6-based arguments, or any other category of "arbitrability" disputes. RAB at 35. It does the opposite: it *defines* "arbitrability disputes" to *include* disputes over the "interpretation" of the Terms and over "who are proper Parties to the Arbitration" and *requires* that such disputes go to the arbitrator. 3-ER-546 (JAMS Rule

13

11(b)). The canon that specific governs over general, RAB at 35, has no application because the specific JAMS Rule 6(e) and the general JAMS Rules 1(a), 7(a), 11(a), and 11(b) are consistent: the arbitrator, not an administrator, decides disputed arbitrability issues like contract interpretation and the proper parties to the arbitration.

In denying Kiana's motion to compel because consolidation was a mere "procedural" dispute, 1-ER-006, the district court ignored the plain language of the Terms and persuasive precedent to the contrary. *See Ciccio*, 2 F.4th at 580 ("Under the agreement and the incorporated AAA rules, it was improper for an administrator to effectively answer that gateway question or to overlook it altogether . . . ."); *Bedgood*, 88 F.4th at 1364 n.5. The Terms require an arbitrator, not an administrator, to decide disputed consolidation, and the law supports that reading.

## B. The Terms and Law Bar Consolidation, and Any Fair Consideration of the Issue Calls for Legal Analysis.

Starz accuses Kiana of arguing that "the district court itself should have decided the consolidation question." RAB at 39. This neglects that any proper textual interpretation of JAMS Rule 6(e) requires some consideration of whether there are colorable arguments that the Terms and the law bar consolidation. Kiana has such arguments, and Starz's

14

contrary views only reinforce that the Terms called for an arbitrator and not an administrator to decide the issue.

The Supreme Court has made clear time and again that the traditional form of arbitration protected by the FAA is individualized, bilateral arbitration. *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 656 (2022); *Epic Sys. Corp. v. Lewis,* 584 U.S. 497, 509 (2018); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 238 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336, 351 (2011); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 686 (2010). Starz's contention that these observations are limited by comparisons to class arbitration and that consolidated arbitration is somehow more akin to bilateral arbitration skips over the Supreme Court's core admonition: the features of individualized arbitration the FAA protects are its informality and speed. *See, e.g.*, *Concepcion*, 563 U.S. at 344, 347-48; *Viking River Cruises*, 596 U.S. at 656. Just like class arbitration, consolidated multiparty arbitration in which one arbitrator adjudicates thousands of individual claims lacks those features. Hence why parties must consent to consolidation by contract. *See Weyerhaeuser*, 743 F.2d at 637.

Bilateral arbitration is the default, and the Terms require it. The Terms allow Kiana to bring claims only in her "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." 3-ER-496. The Terms reference only Starz and Kiana, not Starz, Kiana, and other Starz customers. *See, e.g.*, 3-ER-484, 496. Although these features do not explicitly bar consolidation, they were sufficient for Starz to argue at one time that the Terms require "individual, one-on-one" arbitrations. 2-ER-043. Courts have also found that such features demonstrate an intent to arbitrate individually, independently of other anti-consolidation provisions. *Diaz v. Macys W. Stores, Inc.*, 101 F.4th 697, 704 (9th Cir. 2024) (compiling cases).

Similarly, California law bars consolidation and is not preempted by the FAA. The California Arbitration Act ("CAA") provides the "absolute right" to disqualify a proposed neutral arbitrator upon receipt of required disclosures. *Roussos v. Roussos*, 275 Cal. Rptr. 3d 196, 201 (Ct. App. 2021); Cal. Civ. Proc. Code § 1281.91(b)(1). This right is not waivable. *Azteca Constr., Inc. v. ADR Consulting, Inc.*, 18 Cal. Rptr. 3d 142, 144 (Ct. App. 2004). Yet JAMS administrators read a waiver into

16

the Terms by requiring thousands to exercise their individual rights as one.

That Starz finds individuals' exercise of these rights "cynical," RAB at 47-48, is irrelevant. Starz, a single actor clinging to the self-serving equilibrium, could at any time have chosen to respect the Terms and law and unlink Kiana's right to proceed from other consumers' choices to exercise their independent rights. Instead, Starz blamed and continues to blame counsel for "failing to bludgeon 7,213 people into waiving their statutory rights and settling on the same arbitrator as Kiana." POB at 15. No amount of overheated rhetoric alters the fact that consumers, not counsel, hold the CAA rights exercised here.

Nor does the FAA preempt the CAA's disclosure and disqualification provisions, as there is no conflict. Starz's need to defend the improper administrator-ordered consolidation here forces it into conjuring a conflict, RAB at 48-49, but there is no conflict between the procedure the parties agreed—an arbitrator decides disputed consolidation—and the CAA's disclosure and disqualification requirements. *See Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 964 (C.D. Cal. 2023); *Kalasho v. BMW of N. Am., LLC*, 520 F. Supp.

17

3d 1288, 1295 (S.D. Cal. 2021). A conflict only arises where JAMS administrators exceed their authority to resolve a disputed consolidation before an arbitrator is even appointed, abrogating the CAA by turning the individual disqualification right into an amalgamated one.

Finally, the CAA's requirements are consistent with the FAA's requirements because the FAA also bars consolidation without consent. *See, e.g.*, *Weyerhaeuser*, 743 F.2d at 637; *United Kingdom v. Boeing Co.*, 998 F.2d 68, 74 (2d Cir. 1993) ("the district court cannot consolidate arbitration proceedings arising from separate agreements to arbitrate, absent the parties' agreement to allow such consolidation"); *Protective Life Ins. Corp. v. Lincoln Nat'l Life Ins. Corp.*, 873 F.2d 281, 282 (11th Cir. 1989).[2] Like class arbitration, consolidated arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural

---

[2] Starz relies on the notion that parties "may negotiate for and include provisions for consolidation of arbitration proceedings in their arbitration agreements." *Protective Life*, 873 F.2d at 282. Here, there is no provision allowing JAMS administrators to decide a disputed consolidation before an arbitrator is appointed. Absent such provisions "federal courts may not read them in." *Id.*

morass than final judgment." *See Lamps Plus, Inc. v. Varela,* 587 U.S. 176, 185 (2019) (quoting *Concepcion*, 563 U.S. at 348).

Both class and consolidated arbitration also share several other features in that a single arbitrator resolves thousands of parties' disputes at one stroke, sacrificing confidentiality, increasing the commercial stakes despite the limited availability of judicial review, and joining multiple claims together at once. *See Stolt-Nielsen,* 559 U.S. at 684; *see also Viking River Cruises*, 596 U.S. at 660-61 (finding claims joinder inconsistent with FAA). Kiana raised her demand at the same time as and using the same counsel as thousands of other consumers to make her claim economically viable, RAB at 53, but that has nothing to do with the analytical import of these similarities, nor does it waive Kiana's or anyone else's right to the benefits of "the prototype of the individualized and informal form of arbitration" protected by the FAA. *See Viking River Cruises*, 596 U.S. at 656.

## C. Starz's Counterarguments Are Unpersuasive.

Even if consolidation was a mere "procedural" issue instead of a question of arbitrability, the district court's holding that the question is presumptively for an arbitrator misses the point. 1-ER-006. Having

barred Kiana's access to the *arbitrator* by insisting that *administrators* decide, Starz cannot now seek refuge in cases like *Howsam*, 537 U.S. at 84, or *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557 (1964), holding that procedural issues are presumptively *for* the arbitrator. RAB at 25-27, 39. Those cases supply grounds to reverse and send the matter to the arbitrator, not to affirm and send the matter back to the administrators. Where the parties delegate arbitrability to an arbitrator, the arbitrator must decide. *See, e.g.*, *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 481 (9th Cir. 2024) (arbitrability issue is for the arbitrator); *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016) (same); *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1132 (9th Cir. 2000) (same).

Starz's attempts to distinguish *Ciccio* and *Bedgood* also fail. RAB at 36-37. In *Ciccio*, a plaintiff seeking to avoid arbitration won a ruling from an AAA administrator, "[b]efore the claim got to an arbitrator," that "the claim implicated various AAA policies that precluded arbitration . . . ." 2 F.4th at 579. "[W]hether an arbitration agreement covers a dispute is a gateway question of arbitrability, and here the parties delegated such questions to an arbitrator." *Id*. at 579. It was therefore

20

"improper for an administrator to effectively answer that gateway question . . . ." *Id*. at 580. So, the Sixth Circuit Court of Appeals "reverse[d] and remand[ed] *to send the question to an arbitrator*." *Id*. (emphasis added).

Like the plaintiff in *Ciccio*, Starz seeks to avoid arbitration. Before the claim got to an arbitrator, Starz won rulings from administrators that blocked arbitration. The Terms frame disputes over contract interpretation and "who are proper Parties to the Arbitration" as questions of "arbitrability" for the arbitrator. 3-ER-546 (JAMS Rule 11(b)). Yet relying on JAMS Rule 6(e) just as the AAA administrators in *Ciccio* relied on the AAA's policies, JAMS administrators improperly answered the gateway question for themselves.

*Bedgood* similarly recognized the distinction between arbitrators and administrators. That court decided that AAA administrators acted within their authority in making a non-merits decision about the respondent's failure to comply with the AAA's policies. 88 F.4th at 1363-64. But unlike the JAMS Rules in this case, the AAA rules there made "clear that the determination whether a party has complied with the AAA's policies is an administrative decision that can and should be made

21

by the AAA before it refers the case to the arbitrator." *Id*. at 1364. And the court still recognized that under the AAA's rules, "the administrator—as the name would suggest—makes administrative determinations, while the arbitrator decides the merits." *Id*. at 1364. Had the question in *Bedgood* been "merits-based" and gone to "arbitrability" like the question here, the court would have reached a different outcome. *Id*. at 1364 n.5.

The *Bedgood* Court's analysis distinguishing merits-based decisions from other sorts of administrative decisions goes a long way to explaining why Starz's own cases are inapposite. Courts recognize that administrators may interpret their own rules where the contract expressly allows it or presents no bar, usually in the fee dispute context. *Noble Cap. Fund Mgmt., LLC v. U.S. Cap. Glob. Inv. Mgmt., LLC*, 31 F.4th 333, 336 (5th Cir. 2022); *Wallrich v. Samsung Elecs. Am., Inc.*, 106 F.4th 609 (7th Cir. 2024); *Vital Pharms. Inc. v. PepsiCo Inc.*, No. CV-22-00591-PHX-DLF, 2022 WL 2176528, at *3 n.3 (D. Ariz. June 16, 2022); *Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-cv-3097-T-33TGW, 2020 WL 4201948 (M.D. Fla. July 22, 2020); *Lang v. PTC, Inc.*, Civ. No. 21-04451 (KM) (ESK), 2021 WL 5277190, at *5 (D.N.J. Nov. 12, 2021). But

where the contract does not permit the administrators' actions, these cases offer little support.

*Lang* was an employment dispute in which the parties' contract stated that "arbitration will be conducted by a single arbitrator in accordance with the" JAMS Rules. 2021 WL 5277190, at *2 (D.N.J. Nov. 12, 2021). As a condition of administration, JAMS applied minimum standards of fairness that capped the employee's fees for arbitration. *Id*. After the arbitrator had been appointed, the employer demanded an even fee split. *Id*. at *3. The court found that by requiring JAMS arbitration, the employer had implicitly accepted JAMS's "well-established" policy of applying "certain minimal procedural safeguards." *Id*. at *5.

There is no such well-established policy of administrator-led consolidation here. And in applying the minimum standards in *Lang*, as Kiana asked JAMS administrators to do here, the administrators did not usurp authority reserved to the arbitrator by the contract. If anything, *Lang* resolves Starz's complaint that Kiana's counsel asked JAMS administrators to make a similar decision. RAB at 28-29.

23

*Vital Pharmaceuticals*, which was a commercial arbitration, is similarly unhelpful to Starz. 2022 WL 2176528. The AAA disqualified an arbitrator on the panel in the middle of an ongoing arbitration due to a conflict with one of the parties but permitted that party to appoint a substitute arbitrator. *Id*. at *1. The court rejected the opposing party's petition to replace the substitute arbitrator because the applicable commercial rules stated that "all rules shall be interpreted and applied by the AAA." *Id*. at *3 n.3. Naturally then, the court had "no warrant to disturb" the administrators' authorized interpretation. *Id*. There was no analogous contractual authority here.

Starz's other cases involved situations in which companies waived their right to arbitrate by refusing or failing to pay arbitration fees. In such circumstances, courts have upheld administrators' straightforward adherence to their own rules in closing the arbitrations. *Steffanie A.*, 2020 WL 4201948, at *2-4 (vacating order compelling arbitration after party that won arbitration failed to pay AAA fees); *Wallrich*, 106 F.4th at 613 (reversing order compelling arbitration after administrators closed arbitrations over company's non-payment of fees in part because "the AAA's rules and procedures . . . granted the AAA substantial discretion

24

over resolving fee disputes."); *Noble*, 31 F.4th at 336 (affirming JAMS administrators' non-substantive and rules-authorized decision to terminate an arbitration due to nonpayment of fees). And in all three instances, the courts did not send the petitioners to administrative purgatory, but instead liberated them from the arbitration agreements. Starz's textual and legal interpretation of the Terms does not justify the district court's decision. The Court should reverse.

## II.       Alternatively, The District Court Erred In Not Severing the Unconscionable Provision Depriving Kiana Of A Forum.

If JAMS Rule 6(e) really gives JAMS administrators the power to resolve disputed consolidations before an arbitrator is appointed, abrogating rights guaranteed by California law, then it is unconscionable, and the district court should have severed it.

Without any authority, Starz contends that only respondents can invoke the saving clause, RAB at 56 n.6, and that agreements invalidated under that clause must be invalidated in full, *id*. at 55. But California law supplies both the grounds for invalidity (unconscionability) and the basis for courts to "limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code § 1670.5(a).

### A. The Contract of Adhesion's Imposition of an Effective Liability Waiver Is Procedurally Unconscionable.

As a condition of using Starz's platform, Kiana had to agree to a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Graham v. Scissor-Tail, Inc.*, 623 P.2d 165, 171 (Cal. 1981). The Terms require that Kiana either accept them or not use Starz's platform at all. 3-ER-484.

That Starz chose to incorporate the JAMS Rules into the contract, RAB at 56-57, neither changes the underlying nature of the Terms as a contract of adhesion nor equalizes the parties' bargaining power. *See, e.g., Chee v. Tesla Inc.*, --- F. Supp. 3d ----, No. 24-CV-00180-TSH, 2024 WL 1898434, at *3 (N.D. Cal. Apr. 30, 2024) (holding that arbitration agreement incorporating JAMS employment rules was "indisputably a contract of adhesion, which was presented to Plaintiff on a 'take-it-or-leave-it' basis"). Because of the inequality in bargaining power, Kiana could not have negotiated with Starz even if she wanted to avoid incorporation of JAMS Rule 6(e). Procedural unconscionability exists in such situations, where "the arbitration provision was presented on a take-it-or-leave-it basis and that it was oppressive due to 'an inequality

of bargaining power that result[ed] in no real negotiation and an absence of meaningful choice.'" *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1281 (9th Cir. 2006) (alteration in original) (quoting *Flores v. Transamerica HomeFirst, Inc.*, 113 Cal. Rptr. 2d 376, 381 (Ct. App. 2001)).

The fact that the JAMS Rules are neutral and commonly incorporated into consumer contracts only compounded Kiana's "surprise" that JAMS Rules 6(e) permits arbitration-blocking consolidation. Courts have found diminished procedural unconscionability only in different contexts. *See Chee*, 2024 WL 1898434, at *4 (employee had opportunity to obtain further advice and information but did not); *Styczynski v. MarketSource, Inc.*, 340 F. Supp. 3d 534, 545 (E.D. Pa. 2018) (employee "did not allege that she lacked an opportunity to negotiate the terms of the agreement").

Nor does the fact that Starz's services are recreational in nature cure the procedural unconscionability here. In *Lhotka v. Geographic Expeditions, Inc.*, the drafter of the arbitration agreement argued, like Starz, that "contracts for recreational activities can *never* be unconscionably oppressive because, unlike agreements for necessities . . .

[because] a consumer of recreational activities *always* has the option of foregoing the activity."  104 Cal. Rptr. 3d 844, 849 (Ct. App. 2010).  But although "the nonessential nature of recreational activities is a factor to be taken into account in assessing whether a contract is oppressive, it is not necessarily the dispositive factor."  *Id.* (citing *Szetela v. Discover Bank*, 118 Cal. Rptr. 2d 862 (Ct. App. 2002)).

Like in *Heckman*, 686 F. Supp. 3d at 953 n.7, this case involves a unique circumstance justifying *Lhotka*'s application.  Starz imposed a contract of adhesion on Kiana that required her to waive both her right to proceed in court and, through JAMS Rule 6(e), her right to proceed in arbitration.  This liability waiver, which Kiana had to accept and could not have foreseen, was both oppressive and surprising and therefore generated a high degree of procedural unconscionability, irrespective of alternative services available to her.  That a service is recreational does not give providers the right to impose an implicit liability waiver.

## B. Forcing Amalgamation of the CAA Disqualification Right Is Substantively Unconscionable.

As to substantive unconscionability, the consolidation JAMS administrators effected pursuant to JAMS Rule 6(e) led to an

amalgamated disqualification right in violation of the CAA. Cal. Civ. Proc. Code § 1281.91.

Starz contends that consolidation did not violate the CAA because Kiana and others each still had an individual right to disqualify. RAB, at 60-61. But under California law, "any party"—not any group of claimants represented by the same lawyers—has the unqualified right to disqualify an arbitrator. Cal. Civ. Proc. Code § 1281.91(b)(1); *see also Roussos*, 275 Cal. Rptr. 3d at 201 (describing right as "absolute"). The right is not waivable[3] by contract. *Azteca Constr.*, 18 Cal. Rptr. 3d at 144. Relying on JAMS Rule 6(e), JAMS administrators rendered the right meaningless by deciding that "each side, rather than each individual party, has a right to disqualify an arbitrator." *Heckman*, 686 F. Supp. 3d at 964.[4] The Terms do not expressly allow JAMS administrators to

---

[3] Starz implies that the disqualification right is waivable. RAB at 60 ("Section 1281.91(b)(1) confers only a *waivable* right . . . ."). The statute provides only that if a party fails to serve a notice of disqualification, the right to disqualification is waived. Cal. Civ. Proc. Code § 1281.91(c). It does not stand for the broader proposition, contra *Azteca*, that parties may waive the right by contract.

[4] Hair-splitting aside, RAB at 63, the court in *Heckman* agreed that a provision in an arbitration contract which made such amalgamation of the disqualification right explicit "purport[ed] to waive a nonwaivable right" and was substantively unconscionable. 686 F. Supp. 3d at 964-65.

interfere with Kiana's CAA disqualification right like the contract in *Heckman*. RAB at 64. But that distinction matters little when a contractual provision—here JAMS Rule 6(e)—leads to the same result. Either way, the parties have "contract[ed] away" a nonwaivable right by giving administrators, rather than "any party," the ability to decide whether and how the CAA disqualification right gets exercised. *Roussos*, 275 Cal. Rptr. 3d at 197.

Indeed, California law gives each party the right to disqualify any arbitrator that takes another case at the same time. Ethics Standard 12(b) requires disclosure "if, while that arbitration is pending, he or she will entertain offers of employment . . . including offers to serve as a dispute resolution neutral in another case." Cal. R. Ct. Ethics Standard 12(b); *see also* Cal. R. Ct. Ethics Standard 7 (requiring disclosure if the arbitrator has served as an arbitrator for any of the same parties or attorneys). The standard states that a "party *may disqualify the arbitrator* based on this disclosure." Cal. R. Ct. Ethics Standard 12(b)(3) (emphasis added). California law thus provides that a party may object to the arbitrator in her case serving "as a dispute resolution neutral in another case" and especially one with the same parties or attorneys. *See*

*Honeycutt v. JPMorgan Chase Bank, N.A.*, 236 Cal. Rptr. 3d 255, 263-64, 267-71 (Ct. App. 2018) (vacating an award under Standards 7 and 12). Aware of this right, 3-ER-302, JAMS administrators read JAMS Rule 6(e) to require that every claimant have the same arbitrator anyways. 4-ER-730. An amalgamated disqualification right is substantively unconscionable.

Starz further contends that honoring the CAA's disclosure and disqualification right would conflict with other CAA provisions allowing consolidation. RAB at 62-63. But Kiana is not arguing that "no arbitration governed by California law could ever be consolidated." RAB at 62. A consolidated arbitration remains permissible if a court, Cal. Civ. Proc. Code § 1281.3, or an appointed arbitrator, *see* Section I.A. *supra*, orders it. Consolidation is still allowed where "the statutory and case law criteria for consolidation are satisfied." *Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Super. Ct.*, 34 Cal. Rptr. 3d 659, 671 (Ct. App. 2005). But that is not the case here. Starz's reading of JAMS Rule 6(e) to permit consolidation before an arbitrator can hear the delegated issue is what *creates* the conflict between consolidation and the disqualification right;

31

there is no conflict otherwise.  This is a reason to condemn Starz's reading of the Terms, not endorse it.

Finally, that JAMS has closed the arbitrator appointment process, RAB at 64-65, only negates a fact on which the district court relied in denying the motion to compel:  the "process of selecting an arbitrator appears to still be ongoing." 1-ER-006.  Even if Kiana were to win a court-appointed arbitrator, Starz's reading of JAMS Rule 6(e) assures that the arbitrator would preside only if 7,300 improperly consolidated others consent or join.  The outcome remains substantively unconscionable.

## C.  Consolidated Multiparty Arbitrations Cannot Coexist with Class Action Waivers Under *Discover Bank*.

Starz suggests that the Terms survive the *Discover Bank* rule because the FAA requires enforcement of provisions in contracts that bear the label "arbitration," even if those contracts mandate procedures that the FAA does not protect.  RAB at 67-68.

Such a capacious view of FAA preemption nullifies the saving clause.  POB at 61-62.  The statement in *Concepcion*, 563 U.S. at 352, that "California's *Discover Bank* rule is pre-empted by the FAA[,]" has limits.  *See Meyer v. Kalanick*, 185 F. Supp. 3d 448, 457-59 (S.D.N.Y. 2016) ("[I]t is clear that the Supreme Court has not overridden the

32

California Supreme Court's determination that class action waivers are unconscionable . . . except in the case of an arbitration proceeding."). The Supreme Court has since confirmed that the scope of FAA preemption is more circumscribed. It rejected idea that "the FAA allows parties to contract out of *anything* that might amplify defense risks" irrespective of state laws to the contrary. *Viking River Cruises*, 596 U.S. at 656. "Instead, our cases hold that States cannot coerce individuals into forgoing arbitration by taking the individualized and informal *procedures* characteristic of traditional arbitration off the table." *Id*.

The FAA preempts state laws only to the extent they interfere with the "fundamental attributes of arbitration." *Sonic-Calabasas A, Inc. v. Moreno*, 311 P.3d 184, 201 (Cal. 2013) (citation omitted). As such, the *Discover Bank* rule cannot, consistent with the FAA, invalidate a class action waiver in a contract to arbitrate in a bilateral format. That is why Kiana, perceiving the Terms to require individual arbitration, sought to compel arbitration instead of filing a class action. But the *Discover Bank* rule still can and does, consistent with the FAA, invalidate a class action waiver in a contract to participate in a non-starting multiparty proceeding, even if Starz calls that proceeding "arbitration."

33

Framed differently, companies have only two choices consistent with both the FAA and the *Discover Bank* rule. They may require traditional arbitration alongside a class waiver and get FAA preemption under *Concepcion*. But if they choose not to require traditional arbitration, they get no FAA preemption and must comply with the *Discover Bank* rule. They cannot claim FAA preemption while imposing a process that is "not arbitration as envisioned by the FAA [and] lacks its benefits." *Concepcion*, 563 U.S. at 351.

## D. Courts May Sever Provisions Incorporated into Contracts Just Like Any Other.

Following a finding that JAMS Rule 6(e) is unconscionable, there is no barrier to severance. "[A] contract . . . may include provisions that are not physically a part of the basic document so long as those provisions are sufficiently incorporated by reference." *Kleveland v. Chicago Title Ins. Co.*, 46 Cal. Rptr. 3d 314, 316 (Ct. App. 2006) (citation omitted). The parties agree that the Terms incorporate the JAMS Rules. 3-ER-496; RAB at 70. Excising a single contractual provision, JAMS Rule 6(e), therefore would not implicate the general bar on reforming or augmenting agreements. *See Ajamian v. CantorCO2e, L.P.*, 137 Cal. Rptr. 3d 773, 799-800 (Ct. App. 2012) (affirming refusal to sever where

34

"unconscionability so permeated the provision that it could not be cured except by rewriting it").

California law allows courts to "limit the application of any unconscionable clause as to avoid any unconscionable result." Cal. Civ. Code §1670.5(a). The "statute appears to give a trial court some discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement. But it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 695 (Cal. 2000). There is a single unconscionable provision in the Terms, which are not otherwise "permeated" by unconscionability. *Id.*; *see also Ajamian*, 137 Cal. Rptr. 3d at 799-800. Severance of that provision is appropriate.

Starz's practical concerns are unwarranted. Where JAMS Rule 6(e) is severed from the Terms, the remainder of the JAMS Rules—including those that delegate the substantive legal dispute to the arbitrator—remain in place. Severing JAMS Rule 6(e) to prevent JAMS administrators from consolidating promotes arbitration by ensuring that

35

the dispute over consolidation gets to the arbitrator. By insisting otherwise, Starz advocates only for continued stasis.

## CONCLUSION

This Court should reverse the district court's order and remand with instructions to grant Kiana's motion to compel arbitration.

Respectfully submitted,

Dated: September 12, 2024     By:     */s/ Warren D. Postman*
Warren D. Postman
Albert Young Pak
KELLER POSTMAN LLC
1101 Connecticut Avenue, N.W.
Suite 1100
Washington, DC 20036
(202) 918-1123
wdp@kellerpostman.com
albert.pak@kellerpostman.com

Nicole C. Berg
KELLER POSTMAN LLC
150 N. Riverside Plaza
Suite 4100
Chicago, IL 60606
(312) 280-5790
ncb@kellerpostman.com

Kiran Bhat
KELLER POSTMAN LLC
2333 Ponce De Leon Boulevard
Suite R-240
Coral Gables, FL 33134
(305) 845-4684
kiran.bhat@kellerpostman.com

*Attorneys for Petitioner-Appellant*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 24-1645

I am the attorney or self-represented party.

**This brief contains** | 6,993 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated _____.

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ Warren D. Postman | **Date** | 09/12/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                    38                                    *Rev. 12/01/22*